286 So.2d 890

**Charles Edward RACINE, Jr.**

**v.**

**STATE.**

**1 Div. 170.**

Court of Criminal Apeals of Alabama.

Sept. 25, 1973.

Rehearing Denied Oct. 16, 1973.

Jasper B. Roberts, Montgomery, for appellant.

William J. Baxley, Atty. Gen. and Herbert H. Henry, Asst. Atty. Gen., for the State.

ALMON, Judge.

Appellant was convicted of possessing marijuana and subsequently sentenced to a ten year prison term.

Mobile Police Officer Charles Stuart, while patrolling an upper-class residential neighborhood, spotted appellant and one Paul Wesley Gentry, the driver, riding in an old automobile with loud mufflers. Appellant and companion each had long hair and appellant had a "straggly beard." The streets through the neighborhood were lightly travelled; the hour was late, 11:30 P.M.; and Officer Stuart, thoroughly familiar with habitual travelers through the neighborhood, surmised that appellant and companion were non-residents of the neighborhood. The facts permit the rea-

sonable inference that Officer Stuart was motivated by suspicion when he "put the blue light" on the automobile in which appellant was riding.

After the blue police light was energized, Gentry stopped his automobile and he and appellant alighted and walked toward the police car; whereupon, Gentry and appellant respectively displayed a driver's license and a draft card in response to Stuart's request for identification. Stuart then radioed police headquarters in an effort to determine whether or not any warrants concerning either of the two "suspects" were outstanding. During the radio conversation, appellant ran to the Gentry automobile, retrieved therefrom a plastic bag and commenced a hasty retreat, during which he proceeded to empty contents from the bag. Soon thereafter, Stuart apprehended appellant by "grabbing his arm" contemporaneous with which the bag "fell" to the ground. Stuart picked up the bag and appellant spontaneously declared, "There's nothing around here for miles now, man."

Appellant and Gentry were taken to police headquarters where appellant was booked for vagrancy. Gentry was booked for carrying a concealed weapon.

The State made a proper showing of the chain of custody of the plastic bag and its contents, which culminated in an analysis by State Toxicologist Nelson Grubbs. Grubbs testified that the bag contained five milligrams of marijuana.

## I

Appellant's plea of autrefois acquit lacked merit. The record shows that appellant was charged with vagrancy and, at some point in the prosecution, the State moved to have the case nol prossed. Whether jeopardy had attached need not concern us. Assuming arguendo that appellant had been placed in jeopardy on the vagrancy charge, we hold that former jeopardy is not an apt defense. The law is well settled that a plea of autrefois acquit

is unavailing unless the present offense is precisely the same in law and fact as the former offense. Blevins v. State, 20 Ala. App. 229, 101 So. 478, cert. denied Ex parte Blevins, 211 Ala. 615, 101 So. 482; Smith v. State, 256 Ala. 444, 55 So.2d 208.

Vagrancy, albeit an overbroad offense, is not constituted by possession of contraband. Vagrancy and possession of marijuana are not concentric offenses but are separate and distinct breaches of criminal responsibility. Neither is a lesser included offense of the other. Tit. 14, § 437, Code of Alabama 1940.

## II

We next concern ourselves with the admissibility of evidence obtained subsequent to the "stop" of the automobile. An investigatory detention, though technically a seizure of the person, may be based upon circumstances falling short of probable cause to arrest. Terry v. Ohio, 392 U. S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. It is incumbent upon us to pass upon the propriety of the "stop" in light of the standards of *Terry.*

Officer Stuart had patrolled this particular residential neighborhood each night for more than a year next preceding the incident in question. He testified that he had become thoroughly familiar with the motorists who regularly travelled through the neighborhood; that the appellant and companion were strangers to the area; and, that he was under standing orders from his superiors to "stop and check" suspicious individuals. In an attempt to bolster Stuart's reasonable cause to initiate the "stop," the State attempted during the following colloquy to show a rash of neighborhood burglaries which preceded appellant's detention:

"Q. Had they had any trouble that you had knowledge of in that area at that particular time . . .

"MR. HAAS: Object to that . . .

"MR. CLAY: Of course, Your Honor, it's on voir dire and I think the . . .

"THE COURT: Overrule.

"MR. HAAS: We except.

"MR. CLAY: What type of trouble had you had in that area?

"MR. HAAS: He never answered the question. I object to this question.

"MR. CLAY: Are you familiar with any specific crimes that have been committed in that area?

"MR. HAAS: Object.

"MR. CLAY: Are you familiar with the fact that there were a number of burglaries committed in the area at that time?

"MR. HAAS: He is leading the witness.

"THE COURT: Well, I never did have an opportunity to rule on the second objection you made concerning the crimes. Was that the question?

"MR. CLAY: Yes, sir.

"THE WITNESS: Committed in this area?

"MR. CLAY: Your Honor, if I might make a showing as to what I intend to show by Officer Stuart—I assume that the question will be raised by Mr. Haas—, but rather than go too far with the matter and have the Court rule on it in advance, I intend to show that he was patrolling in this particular area where they had had a number of burglaries in this particular neighborhood, that he was aware of this, and had been under orders to be under particular close scrutiny in this neighborhood, that he was doing this on the 24th of March and that he was familiar with the cars that generally came in and out of this rather quiet residential area, and on this particular occasion, saw an older model automobile with the Defendant and another friend of his, long-hair types. There again is the grounds with the other information he had, plus the late hour of night, to give him sufficient cause and reasonable suspicion to stop these individuals. That would be the intention of my showing these other matters, and I think it is proper in this particular instance to even go into hearsay matters to determine whether he had reasons sufficient to stop these people.

"MR. HAAS: Can we proceed on a question and answer basis? I am willing to . . .

"THE COURT: Well, I think all the State was doing was stating what he hoped to show. Of course, the jury is outside so it has no effect on them. Go ahead and ask on each individual question what you want to, Mr. Clay. Then, Mr. Haas, if you have any objection to each individual question, you should make it at that time.

"MR. CLAY: All right. You stated that you had worked in this same area for a period of a year, approximately, prior to that time?

"A. Yes, sir.

"Q. From your working out there, were you generally familiar with the automobiles that you saw in that area?

"A. Yes, sir.

"Q. And had there been any particular problems, any crimes committed, to your knowledge, in that area?

"MR. HAAS: Object to that; immaterial and irrelevant.

"THE COURT: I am going to sustain the objection.

"MR. CLAY: Your Honor, of course, I will submit to the Court that this is material as to whether he had reasonable grounds to stop this man. Assuming that he is going to object to it,

which I would think Mr. Haas knows I would have to show all of these things to show that the man had reasonable grounds to stop this individual . . .

"THE COURT: Well, you asked him —I believe your question was, had there been any particular crimes. Is that right?

"MR. CLAY: To his knowledge.

"THE COURT: I am going to sustain the objection as to the way the question is worded." (R. 60–62)

■ We hold the proffered testimony to have been admissible during the in-camera proceedings to establish reasonable grounds for the "stop." The prosecution made no contention that the proffered evidence was admissible during the trial in chief and, indeed the evidence was admissible for no purpose other than establishing the reasonable cause to justify the investigatory stop.

Even without the benefit of the proffered evidence, the trial court was justified in inferring that the neighborhood had been infested with frequent criminal activity and that Officer Stuart was so apprised. This inference was predicated upon Stuart's testimony that he had patrolled the neighborhood each night for more than one year and upon the fact that Stuart had standing orders to "stop and check" suspicious persons.

■ The facts known to Officer Stuart at the time of the "stop" concurred to produce his reasonable suspicion that criminal activity was afoot. The hour was late; the occupants' appearances and the automobile's state of disrepair tended to negate an ensuing late evening social visit to a home in the upper-class neighborhood; Stuart's familiarity with the neighborhood and its residents led him to reasonably conclude that appellant and companion were strangers to the neighborhood; the area was lightly travelled; and, inferably Stuart knew that the neighborhood was crime-prone. An additional fact, supportive of reasonable cause to detain appellant, intervened the "stop" and Stuart's request for identification. When the driver stopped his automobile, both he and appellant quickly alighted and walked away from their vehicle and toward the police car. This gave reasonable cause to suspect that the automobile contained contraband or other inculpatory evidence.

We hold the "stop" and subsequent request for identification to have been reasonable within the meaning of the Fourth Amendment to the United States Constitution. Further, the police activity was expressly authorized by legislative enactment. Act No. 157, Acts of Alabama, Special Session 1966; see also Bates v. State, 48 Ala.App. 489, 266 So.2d 155, cert. denied 289 Ala. 740, 266 So.2d 160.

■ Even assuming arguendo the "stop" to have been unlawful, we feel the exclusionary rule inapplicable to the facts of the case sub judice. The "stop" and detention of appellant in this case constituted no more than a sine qua non for the discovery of the plastic bag containing marijuana. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, holds that the test of excludability is not whether or not evidence would have come to light but for the illegal police actions but whether the evidence results from exploitation of the illegality or from means purged of the original taint. We hold that the evidence sought to be excluded came to light as a proximate result of appellant's panic and its revelation can in no way be attributed to police activity, lawful or unlawful.

The purpose of the exclusionary rule is to prohibit an invasion of Fourth Amendment rights by making illegal searches and seizures unfruitful in the evidentiary sense. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. Application of the rule to the facts of this case would serve no purpose in deterring unlawful police "stops." Indeed, the chances of a police "stop" triggering the revelation of contra-

band, as in this case, are infinitesimally small. Simply, a police officer predisposed to making ill-advised "stops" is not deterred by the inconceivable prospects of having excluded evidence which comes to light under unpredictable circumstances similar to those in this case. For the exclusionary rule to serve its avowed purpose, the police activity must be calculated to lead to the discovery of evidence sought to be excluded. To conclude that Officer Stuart's activity was so calculated would necessitate the absurd finding that he had an incredible extrasensory perception if not a psychic command of future events.

### III

Officer Stuart was permitted over strenuous objections of appellant to testify that appellant had long hair and a "straggly beard." This evidence was proper at the in-camera hearing where it was sought to establish that reasonable grounds accompanied appellant's detention. However, we are not convinced that the evidence was admissible during the trial in chief. Error must, however, be prejudicial to the substantive rights of the appellant before a new trial will be ordered. Supreme Court Rule 45. Since the court pronounced sentence, and since the evidence of guilt was clear and uncontroverted, we are not persuaded that the evidence of appellant's appearance at the time of the arrest prejudiced him in the proceedings below.

### IV

Appellant moved for a mistrial on the ground that he was brought into the courtroom handcuffed. We are cognizant of the general principle that a criminal defendant should be shackled or manacled only in those extreme cases where the circumstances suggest the manifest necessity. Faire v. State, 58 Ala. 74; Clark v. State, 280 Ala. 493, 195 So.2d 786. However, we feel that the learned trial court cured any error in this respect by proper instructions to the jury.

### V

Appellant filed a motion to quash the venire on the ground that persons between the ages of twenty-one and thirty were systematically excluded from jury service in Mobile County. The evidence was insufficient to establish this contention inasmuch as there was offered no statistics referable to age distribution of either population or jury rolls. As to whether persons within a particular age range constitute a cognizable group for purposes of jury service, see United States v. Guzman, D.C., 337 F.Supp. 140; United States v. Waddy, D.C., 340 F.Supp. 509. Also see Thigpen v. State, 49 Ala.App. 233, 270 So. 2d 666.

The judgment below is hereby

Affirmed.

All the Judges concur.