Appellant was convicted of possessing cocaine and the jury declined to assess a fine. The Court sentenced him to fifteen years in the penitentiary. Prior to trial the Court determined that appellant was indigent and appointed counsel to represent him. At arraignment, in the presence of his attorney, appellant waived the reading of the indictment and pleaded not guilty. After sentence was imposed he gave notice of appeal and was furnished a free transcript. *Page 505 
Trial counsel represents him on this appeal by court appointment.
The State's evidence was uncontradicted. Appellant did not testify nor did he offer any evidence in his behalf.
Ms. Alilee Pillman testified that she is a Toxicologist for the City of Mobile Crime Laboratory. Her qualifications as a Toxicologist were admitted by defense counsel. She received two packets of a white substance from Police Officer Jimmy West on March 22, 1977, and following a laboratory analysis she stated the substance was cocaine. On March 23, 1977, she received from Officer Brian Delmas a screwdriver on which there were paint and wood specks along with a piece of painted wood. She performed a microscopic examination of these items and formed an opinion that the paint and wood specks from the screwdriver were similar in all respects to the paint on the piece of wood turned over to her for examination. By agreement this witness was taken out of turn so that she could return to her laboratory duties.
Shannon W. Poole testified that he was a Police Officer for the City of Mobile. On March 22, 1977, he and Officer Jimmy McLaughlin were en route from the Police Firing Range, when he saw appellant crossing the street. Appellant looked in the direction of the police car and then ran, "went into the hedge bushes," as the police car approached. When Poole and McLaughlin reached that point, Poole saw appellant running off to the north. Appellant threw some object on the ground. Appellant stopped when Poole ordered him to halt. Poole went to the spot where he had seen appellant throw something down. There he found a screwdriver.
At this point, a woman came out of a house on the corner of the intersection where the above events transpired. She was "hollering for the Police, saying that she had been robbed." Poole placed appellant under arrest and left him with McLaughlin while he "went to the house where the woman was hollering." Subsequently, several other officers arrived on the scene. Poole further testified that appellant did not live in that neighborhood and did not work there. He knew appellant from past experiences.
From the record:
 "WITNESS: I stopped Mr. Luker because from this area we had received calls from that area several months with reference to burglaries and I knew of Mr. Luker's reputation."
Jimmy McLaughlin, a Mobile Police Officer, testified that he conducted a "pat-search" of appellant for weapons. None was found.
McLaughlin further testified that he and Poole went on duty at 6:30 a.m. Before going "in-service," he and Poole conducted a routine search of the squad car to determine if any weapons had been left in the car. Such a search was conducted by them every day. Nothing was found in the car, including under the back seat. From the time Poole and McLaughlin went "in-service" until appellant was placed in the back seat of the car, no one else had been inside the car. The car had been occupied by Poole and McLaughlin only and was locked while they were at the Firing Range.
McLaughlin testified that he summoned the detective division to the scene. At that time he conducted a second frisk of the appellant because he still wasn't sure that appellant did not have a weapon. Again, no weapon was found. McLaughlin felt under the back seat and did not find anything.
When the detectives, Officers West and Coley, arrived at the scene, appellant was transferred to another car. Following the transfer, the back seat of McLaughlin's car was again pulled out. Officer Coley found a plastic bag "with two small bags inside it," containing a white substance.
Officer Coley testified that he conducted an investigation on March 22, 1977, at the home of Mrs. Lott. A window had been "pried up." Coley then prepared to transfer appellant to another car in which there was a restraint screen between the front and back seats. *Page 506 
From the record:
 "A. I took Mr. Luker out of the car to carry him over to Mark Cook's car. I pulled the seat out again to check where Mr. Luker had been sitting and in the right rear floorboard under the seat, right where the two seats join in the floorboard, there was a plastic container containing two small plastic bags of white substance."
Coley gave this package to Officer West, who testified that he, in turn, gave that package to Alilee Pillman, the Crime Lab Toxicologist. West further testified that he turned over to Officer Delmas a screwdriver given to him by Officer Poole at the scene.
Officer Delmas testified that he received a screwdriver at the scene from Officer Coley. Both police officers were standing side by side when Coley handed him the screwdriver. Delmas also testified that he collected paint and wood samples from the home of Mrs. Lott.
Lorraine Lott testified that on March 22, 1977, she reported a break-in at her home. Mrs. Lott found a window open in the dining room; the lock was broken "where they had pried the window up."
Appellant contends that the State's evidence should have been suppressed, since the arresting officers had no probable cause to stop the appellant on that occasion.
While the police officers had no probable cause to arrest appellant until Mrs. Lott appeared on the scene, they certainly had the authority to take the course of action that they did.Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. An investigatory detention, though technically a seizure of the person, may be based upon circumstances falling short of probable cause to arrest. Racine v. State, 51 Ala. App. 484,286 So.2d 890.
The facts that the officers were familiar with the neighborhood; knew appellant was a stranger to the neighborhood; knew that there had been recent complaints of burglaries in the neighborhood; and the furtive movements of appellant; were sufficient grounds upon which the officers should have conducted an investigatory stop. This Court, inBowens v. State, 54 Ala. App. 491, 309 So.2d 844, similar on the facts to the case at bar, wrote:
 "To say that these were not unusual circumstances and that it did not afford reasonable grounds for some investigative procedures such as stopping and, at least, receiving some information, identification and etc., from appellant, would be to abandon common judgment and common sense. We think circumstances provided reasonable grounds for the action of the officer and that his evidence tended to show that he was properly discharging his duties at the time."
Thus the trial court committed no error in failing to suppress the cocaine.
At the close of the State's case, appellant moved that the State's evidence be excluded on the ground that a prima facie case was not established. In particular, he alleged that the State failed to show that he exercised the requisite intent to possess the contraband. Williams v. State, Ala.Cr.App.,340 So.2d 1144.
Appellant's contention is without merit. Constructive possession of narcotics is established where it is shown that the defendant had actual or potential control of the drug and an intent to exercise dominion or control of the substance and external manifestation of intent and control. Williams, supra, and citations therein. Surrounding facts and circumstances may be sufficient to establish these elements of possession. Parksv. State, 46 Ala. App. 722, 248 So.2d 761; Fields v. State, Ala.Cr.App., 333 So.2d 861. The surrounding facts and circumstances of the finding of the cocaine, as set out above, were sufficient for the jury to determine the appellant's possession of the substance.
During the closing argument of the Assistant District Attorney, the following occurred.
From the record:
 "MR. McMAKEN: Mr. Pennington has put no witnesses on to contradict the State's evidence at all. *Page 507 
 "MR. PENNINGTON: May it please Your Honor, the Court, I object to his statement that I have put no witnesses on at all and I would like to reserve the right to elaborate on that objection at the end of arguments.
 "THE COURT: I am going to sustain the objection to that point and instruct the Jury to disregard that statement made to you. Do not consider that at this time as proper closing argument. Let's go ahead, Mr. McMaken."
Further:
 "(Whereupon, while the Jury was deliberating, the following proceedings were had and done, outside the presence of the Jury:)
"THE COURT: All right; go ahead now.
 "MR. PENNINGTON: I just want to — my objection to Mr. McMaken's argument as to the fact that the Defense put on absolutely no testimony, I would like to note that even though that objection was sustained by the Court, that I believe that that is a direct comment on the failure of the Defendant to take the witness stand and even though the Court sustained it and ordered the Jury not to consider that, that it is of such a nature that it would make it impossible to strike that from the minds of the Jury and as a result is a fatal defect in the final argument by the State of Alabama, that the trial at this point should be declared a mistrial."
The trial court refused to grant a mistrial.
In Beecher v. State, 294 Ala. 674, 320 So.2d 727, we find the following:
 "The rule of Alabama constitutional law which we adopt today may make it appear that a prosecutor could never impress the jury with the fact that his case, or any facet of it, is uncontradicted. Where the State's evidence does stand uncontradicted, the prosecutor does have the right to point this out to the jury. In that circumstance the prosecutor could say: `There has been no refutation of any of the evidence presented by the State;' or more simply, `The State's evidence stands uncontradicted;' or other appropriate comment to like effect."
In Gissendaner v. State, Ala.Cr.App., 338 So.2d 1025, the rule is stated to be:
 "The State may in its closing argument assert that its case is uncontradicted. . . . There must be virtually direct identification of a defendant alone as the individual who has not become a witness before the State's comment will be interpreted to be an unfair comment upon the defendant's failure to testify."
We have noted that appellant's objection and motion for a mistrial were not made before the jury retired to commence their deliberations. The law is well settled that exceptions to the oral charge, or any part of it, to be availing, must be taken and reserved in the presence of the jury and before the jury retires. Lowery v. State, Ala.Cr.App., 342 So.2d 797.
We have carefully examined the record for errors injuriously affecting the substantial rights of appellant and have found none.
The judge told appellant at the time he sentenced him to fifteen years in the penitentiary that his record revealed that he had been involved in violation of the law "in this county and this State as far back as 1965."
The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur. *Page 508