First degree robbery — habitual offender treatment; sentence: life imprisonment without parole
Shortly after noon on July 28, 1980, the Junior Food Mart located on Pearson Avenue in the West End community of Birmingham was robbed by two black males, one of whom was armed with a .32 caliber revolver. The robbers stole approximately $160 in currency, a check made payable to the store, some register receipts, and two cartons of Kool cigarettes. The robbery was reported to the Birmingham police through the use of a silent alarm wired to the cash register. A radio dispatch was broadcast concerning the robbery and its location. The appellant, who was driving the getaway car, and his confederates were apprehended moments later. They were subsequently transported to the store where the clerk identified the robbers and the items taken
 I
Appellant contends that the police were without probable cause to stop his car; thus the incriminating evidence found on the robbers and in the car was illegally obtained and therefore inadmissible
On voir dire examination outside the presence of the jury, Birmingham Police Officer William Patterson testified that he and his partner were patrolling the West End area on the date of the instant incident and were about four blocks away from the scene of the robbery when they received the radio dispatch Officer Patterson stated that while the dispatch informed him of the location of the robbery it did not provide any information concerning the number and description of robbers or a description of the getaway vehicle
The officers responded to the dispatch and headed toward the store. About a block and a half distance from the store, Officer Patterson observed a white over yellow Buick travelling very slowly away from the store toward him. He also observed several people near the corner of Pearson Avenue and 26th Street "pointing in the direction that the car was travelling." The car was the only vehicle using the street at the time. It was occupied by three black males. The appellant was driving and the other two were sitting in the rear. Officer Patterson testified that he saw the people pointing toward the car just prior to his stopping it. He stopped the car and had the occupants raise their hands where he could see them. He stated that at the time he stopped the car it was his intent "to check this car out to see if they could be the robbery suspects."
After approaching the car, but prior to searching any of the occupants, Officer Patterson saw a pistol in plain view lying on the rear floorboard. He also saw a brown paper sack on the rear seat between the two occupants. The officers removed the men from the car and searched each one for weapons. On one of the occupants was found another pistol, a sum of money, a check made payable to the store, and several cash register receipts Within a couple of minutes of the search, Officer Patterson was informed of the details of the robbery, including descriptions of the robbers. Officer Patterson stated that no search of the car was made until the details of the robbery were known Nothing related to the crime was found on the appellant
It is clear that the initial stop of the appellant's car constituted a "seizure" within the purview of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391,59 L.Ed.2d 660 (1979). However, probable cause is not always the standard to be applied in situations such as the one sub judice
as it is well recognized that in certain instances an investigatory stop may be made under circumstances that constitute less than probable cause within the commonly accepted meaning of that term. Terry v. Ohio, 392 U.S. 1,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In Terry the United States Supreme Court, in discussing warrantless stops based on less than probable cause, stated:
 "[W]e deal here with an entire rubric of police conduct — necessarily swift action *Page 448 
predicated upon the on-the-spot observations of the officer on the beat — which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved . . . must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures
 "In order to assess the reasonableness of [an officer's] conduct as a general proposition, it is necessary `first to focus upon the governmental interest which allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is `no ready test for determining reasonableness other than by balancing the need to search [or seize] against the invasion which the search [or seizure] entails.' . . . And in justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . ." (Footnotes omitted.) (Second and third brackets appeared in Terry.) (Citations omitted.)
See also Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921,32 L.Ed.2d 612 (1972)
As we stated in Minnifield v. State, 390 So.2d 1146, 1152
(Ala.Cr.App.), cert. denied, 390 So.2d 1154 (Ala. 1980):
 "The concept of the investigative stop has been adopted by statute in Alabama, § 15-5-30, et seq., Code of Alabama 1975, and though Terry [v. Ohio supra] was factually concerned with stops of suspicious characters on sidewalks, it is clear from the subsequent decisions of both the United States Supreme Court and the appellate courts of this State that the Terry principle is equally applicable to the stop of a vehicle. . . ."
See also Butler v. State, 380 So.2d 381 (Ala.Cr.App. 1980);Luker v. State, 358 So.2d 504 (Ala.Cr.App. 1978); Racine vState, 51 Ala. App. 484, 286 So.2d 890, cert. denied, 291 Ala. 684, 286 So.2d 896 (1973)
A review of the evidence reveals that Officer Patterson had the following facts before him when he stopped the appellant's car: (1) a robbery had just been committed, (2) he had observed the appellant's car a short distance from the store and only moments after the radio dispatch concerning the robbery had been received, (3) the appellant's car was the only vehicle on the road at the time he observed it, and (4) immediately prior to stopping the appellant's car, he had seen several people near the store pointing in the direction of the appellant's car
We find that the action of Officer Patterson in stopping the appellant's car was "a legitimate and minimally intrusive procedure under the circumstances." Minnifield, supra at 1152 Thus, we find that Officer Patterson had "specific and articulable facts" before him from which he could have formed a reasonable suspicion that the appellant had been involved in the robbery. Recognizing that "effective crime prevention and detecting" are important governmental interests, "it would have been poor police work . . . to have failed to investigate . . further." Terry v. Ohio, supra. Consequently, the trial court properly overruled the appellant's motion to suppress
 II
Once Officer Patterson saw the pistol in plain view on the rear floorboard of the car, he had sufficient probable cause to search each occupant for weapons. Herrin v. State,349 So.2d 103 (Ala.Cr.App.), cert. denied, 349 So.2d 110 (Ala. 1977);Hoppins v. State, 337 So.2d 134 (Ala.Cr.App. 1976). After finding evidence of the robbery on one of the passengers, along with another pistol, and after receiving the details of the robbery, Officer Patterson was justified in conducting a search of the appellant's vehicle. Nikolic v. State, 384 So.2d 1141
(Ala.Cr.App. 1979), cert. denied, 384 So.2d 1151 (Ala. 1980);Preyer v. State, 369 So.2d 901 (Ala.Cr.App. 1979). See also NewYork v. Belton, ___ U.S. ___, 101 S.Ct. 2860, 69 L.Ed.2d 768
(1981)
A careful review of the evidence reveals that the appellant, while not personally perpetrating the crime, was a party to it by *Page 449 
his complicity. Section 13A-2-23 (2), Code of Ala. (amended 1977). Thus, the trial court properly overruled his motion to exclude
AFFIRMED
All the Judges concur