LEIGH M. CLARK, Retired Circuit Judge.
A jury found appellant guilty of robbery in the first degree. Thereafter, a proceeding was conducted under the Habitual Felony Offenders Act, which, after proof of his previous commission and conviction of three felonies, resulted in the court’s imposition of a sentence of imprisonment for life without parole. This, according to Alabama Criminal Code, § 13A-5-9(c)(S), when considered with § 13A-8-41(c), was the only punishment that could have been legally imposed upon defendant.
There was positive eyewitness testimony that defendant was one of two robbers who, about eight or nine P.M. on July 28, 1980, came into Zippy Mart on Lomb Avenue in Southwest Birmingham and, that while defendant was pointing a pistol at one of the employees of the convenience store, he ordered her “to get on the floor” and to “give him the money out of the cash drawer,” which she did. Defendant did not testify in the case, and no witness testified in his behalf. There is no contention on appeal to the effect that the evidence was not sufficient to sustain the verdict and judgment, and we find no reasonable basis for such a contention.
Only two contentions are made on appeal, which we now discuss.
Appellant urges that his “conviction should be voided because there was no probable cause to arrest him.” We find that appellant is not thereby referring to any arrest of defendant for the robbery for which he was convicted in the instant case. Appellant’s counsel is referring to appellant’s arrest for another robbery, which robbery was committed the afternoon of July 28, 1980, approximately eight hours before the robbery in the case now under consideration. Defendant was not arrested for the first robbery until after the robbery now under consideration. After he was arrested and placed in jail for the first robbery, a lineup transpired, at which he was identified by the eyewitness in the present case as one of the two robbers who had robbed her. Appellant’s attorney ingeniously argues that the arrest for the first robbery, which seemingly was originally without a warrant, was without probable cause and that such asserted illegal arrest renders inadmissible any evidence as to a lineup identification by the eyewitness in this case while defendant was still in jail by reason of such arrest. Without consideration of any collateral problem that could be presented as to appellant’s interesting contention, we proceed directly to a determination of it. The question under consideration was raised in the trial court in connection with defendant’s motion to suppress testimony as to the identification of defendant as one of the robbers. It was stipulated by the parties that the testimony of Birmingham Police Officer William Patterson as to the arrest of this appellant as one of those accused of the other robbery would be considered as evidence in this case. The testimony of Officer Patterson was taken in the case in which the appellant herein was convicted of the other robbery, from which an appeal was taken and the judgment of the trial court affirmed without an opinion in Ladd v. State, Ala.Cr.App., 6 Div. 554, on June 30, 1981, about twenty days after appellant was sentenced in the case sub judice.
In a companion case to that of Ladd v. State, supra, Johnson v. State, Ala.Cr.App., 406 So.2d 446 (1981), appellant raised the issue as to whether the conduct of law enforcement officers on patrol in stopping the automobile near the scene of the reported robbery, observing a pistol near one of the three occupants of the automobile, searching the automobile, finding “evidence of the robbery on one of the passengers, along with another pistol,” after receiving details of the robbery, all without a warrant, met constitutional requirements of a warrantless search of the vehicle and each *940 of the occupants. It was held therein that it did, and that the incriminating evidence found on the robbers and in the automobile was admissible in evidence against the defendant and that the motion in the trial court to suppress such evidence was properly denied. In the opinion in Johnson v. State, there is a review of controlling authorities on the subject, as well as the following concise summary of the pertinent facts:
“A review of the evidence reveals that Officer Patterson had the following facts before him when he stopped the appellant’s car: (1) A robbery had just been committed, (2) He had observed the appellant’s car a short distance from the store and only moments after the radio dispatch concerning the robbery had been received, (3) The appellant’s car was the only vehicle on the road at the time he observed it, and (4) immediately prior to stopping the appellant’s car, he had seen several people near the store pointing in the direction of the appellant’s car.”
The opinion in Johnson, by Judge Bookout, also shows that a prompt showup followed the search and seizure, at which “the clerk identified the robbers and the items taken.” The rationale of Johnson v. State is controlling here as to whether there was probable cause for the arrest of this appellant. The motion to suppress evidence as to the lineup identification of the appellant herein as one of the robbers in the instant case, on the sole ground that his arrest and incarceration in the other case was illegal, is not supported by the facts. Whether otherwise deficient or not, the motion was properly denied.
Appellant’s only other contention for reversal is thus stated in his brief:
“Appellant continues to assert that, because of the mention of his name in the presence of certain members of the ve-nire who sat in a case that had concluded the previous day, the jury venire was tainted and such requires reversal of the trial court’s judgment. The trial judge’s attempt to exclude those members of the venire had no curative effect.”
In the early stage of the proceeding after this case was called for trial, and before a panel of jurors from whom the jury was to be selected had been brought to the courtroom, the following occurred:
“THE COURT: I told Mr. Sullivan [defendant’s attorney on the trial, not his attorney on appeal] this but I want to tell it in the presence of Mr. Ladd. We have just finished trying a robbery case involving a Johnson.
“MR. BOUDREAUX [prosecuting attorney]: Matthew Charles Johnson.
“THE COURT: Matthew Charles Johnson. The jury found him guilty of robbery in the first degree. In the course of that trial — not on 'the voir dire of the jurors, it wouldn’t come up there, in the course of that trial the name of Ladd was mentioned several times as being one of the three, one of the three robbers. He was never identified and was not charged with this robbery. It went on and finished. To make sure that those jurors who heard the name of Ladd, and I assume if Ladd came down here right now, like he is, they might connect him even though he wasn’t charged. His name was used in a lineup and so on. To make sure that they wouldn’t be involved at all I excused them to 10:30 this morning. Their cards are not in the box. I’m holding their cards. That’s why I wanted to get my 27 jurors out of the jury assembly now, so when the jurors came in there would be no discussion. The name of Ladd wasn’t that significant. To make real sure I told them not to come in until 10:30. That’s why I’ve got the box now so there will be no mixup. I thought I would put that on the record to make sure everyone understands that.
“MR. SULLIVAN: Judge, we would enter a formal objection to proceeding with the trial at this time. It would be our contention that the jury venire has been contaminated by that fact, plus the fact the other co-defendants are presently being tried and juries have been struck in those cases.
*941 “THE COURT: When this jury returned a verdict it was late yesterday afternoon. They went straight home. They never did return to the jury assembly room. I don’t know what time that was — it was about a quarter of 5. Anyway, the jury assembly was locked. I called the bailiff to find out about trying to get the box early and he was already gone. Lidge is also being tried in Judge Nice’s court, right?
“MR. SULLIVAN: Yes, sir.
“THE COURT: Is Lidge involved, in this particular robbery?
“MR. SULLIVAN: Yes, sir, he is the co-defendant in this particular robbery. “THE COURT: Well, of course, that jury is in the process of trying that case. They aren’t running into this problem. The jury that tried this, Lidge was also named in the case I tried yesterday as a co-defendant. I think he is a co-defendant in the same robbery.
“MR. SULLIVAN: Yes, sir.
“THE COURT: Is he a co-defendant in this particular robbery?
“MR. SULLIVAN: Willie Lidge is in this robbery. Johnson is not in this robbery. “THE COURT: I heard your objections. I’ll overrule them. The time your name was mentioned, you were in a lineup that Johnson was in. They didn’t identify you. You were just one of the people in the lineup. They identified Lidge and Johnson, but no one identified you. But you were in the lineup. That’s how your name got in the case. I guess you were over there with someone else — for something else. That’s where they got the lineup people.”
Thereupon, the panel of jurors from whom the jurors in this case were selected by the process of striking were brought into the courtroom, and the trial jury was selected without any further reference to the matter contained in that part of the transcript quoted above.
By objecting “to proceeding with the trial at this time” on the ground that the jury venire had been contaminated by what had just been disclosed, defendant and his counsel were placed in the same position as if they had moved that the jury venire be quashed on such ground. Although there was some danger that some of the panel of jurors from whom the jury was to be selected to try the case could have heard, in and about the courthouse, some remark pertaining to this case, or to the appellant, that would have been prejudicial to him, we think the action of the trial judge, in deleting the names of the jurors in the other case from the list of jurors from which the jury was selected to try this case, removed any serious doubt as to their having thereby been protected against contamination by the references that had been made to appellant in the case over which the same trial judge had presided the day before. Even if there was some danger of contamination, the governing principle is thus stated by Judge Bowen in Cole v. State, Ala.Cr.App., 352 So.2d 17, 19 (1977), writ denied, 352 So.2d 20:
“The trial judge acted properly in overruling the motion to strike the entire jury venire. A challenge to the array or a motion to quash or strike the venire will not be sustained unless it is alleged and proved that the whole venire is tainted with prejudice. Nickerson v. State, 283 Ala. 387, 217 So.2d 536 (1969); Junior v. State, 47 Ala.App. 518, 257 So.2d 844, cert. denied, 288 Ala. 744, 257 So.2d 852, cert. denied, 407 U.S. 923, 92 S.Ct. 2473, 32 L.Ed.2d 810 (1971); Lane v. State, 40 Ala.App. 174, 109 So.2d 758 (1959); Burton v. State, 194 Ala. 2, 69 So. 913 (1915). The objection goes to the individual jurymen and not to the whole venire or panel”
We find no error prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur.