ON REHEARING
LEIGH M. CLARK, Retired Circuit Judge.
.In his application for rehearing, appellant “submits that the Court of Criminal Appeals may have erred in its consideration of Appellant’s contention that the investigatory stop was illegal and that evidence obtained therefrom was improperly admitted into evidence” and requests that, pursuant to Rule 39(k) of Rules of Appellate Procedure, appellant’s “Statement of Additional Facts” be added to “any opinion which may be rendered in this cause.” In our view, the purported Statement of Additional Facts cited in appellant’s application for rehearing does not constitute the “statement of facts” covered or contemplated by Rule 39(k), for the reason that to a great extent it is appellant’s argumentative summation of his own interpretation of the evidence, which is largely the same as found in appellant’s brief on original submission and which was challenged for accuracy by ap-pellee’s Statement of the Facts, which commenced as follows:
“The Appellee’s Statement of the Facts is supplemental to and in correction of the Appellant’s Statement of the Facts.”
Appellant submitted no brief in reply to appellee’s brief.
Although appellant’s brief on original submission was well supported by authorities as to when an “investigatory stop” is unconstitutional, the writer of the opinion was (and he still is) convinced that the cases relied upon by appellant are distinguishable from the facts in the instant case and that appellee’s analysis of the particular issue, with citations of supporting authorities, was correct, and that appellant’s only insistence on a reversal of the judgment of conviction was without merit. Perhaps this did not justify the writer’s failure to discuss the issue, which faded into one as to the proper interpretation of the evidence in the case rather than one as to what is the governing law on the subject. Now that appellant continues to press his contention that “the investigatory stop [by a police officer of the appellant while driving an automobile in the area where the burglary for which he was convicted was committed] was illegal and that evidence obtained therefrom was improperly admitted into evidence,” we will proceed as far as we can, in response to the application for a rehearing, to recite that which appellant claims is a statement of additional facts, which we now quote, with our qualifying and modifying comments inserted within brackets, in the following indentation:
“On August 29, 1981, the Appellant, Alton Buchanan, was summarily detained by Officer Don Pressnell of the City of Athens, Alabama, Police Department. (R. 15). Said detention occurred within the city limits of Athens, Alabama, and in the parking lot of the Bullington Brothers business on Highway 72 East in Athens, Alabama, at approximately 8:00 p.m. (R. 16). [Officer Pressnell testified that he was on duty at the time in checking *144 different businesses in Athens and making sure that the doors were secure and checking for attempted enterings in buildings. The characterization of any detention by Officer Pressnell as a summary detention is argumentative and is not supported by any specific language in the testimony.]
“The investigatory stop by Officer Press-nell was made after he had observed Mr. Buchanan’s vehicle traveling in the parking lot without the aid of headlights (R. 17). The parking lot was lit by security lights (R. 19). Officer Pressnell turned on his blue lights upon seeing Mr. Buchanan’s vehicle (R. 16 through R. 17). Officer Pressnell felt that Mr. Buchanan’s automobile could have been one belonging to the Bullington brothers (R. 20). Bullington Brothers Company owned the parking lot in question and the buildings and business located on it (R. 54 through R. 55). [Officer Pressnell did testify on voir dire interrogation by defendant’s counsel by a categorical answer to a leading question by defendant’s counsel that the automobile could have been one belonging to the Bullington Brothers. He also said that he had never seen the automobile before, but that he did not know, for a fact, that it was not a Bullington Brothers car.]
“After stopping Mr. Buchanan’s vehicle, Officer Pressnell searched it and called for assistance (R. 26 through R. 27). [Officer Pressnell did not search Mr. Buchanan’s vehicle[1]].
“After assistance arrived, Officer Press-nell conducted a searching of the Bulling-ton Brothers’ building and grounds and discovered a possible burglary (R. 38 through 39). The Appellant, Alton Buchanan, was arrested (R. 50). The burglary was confirmed by Mr. Robert Bull-ington, part owner of Bullington Brothers Company (R. 55).
“[The remaining two paragraphs of appellant’s purported Statement of Additional Facts are not in fact a statement of facts, but in compliance with appellant’s request we recite both of said paragraphs.] At the close of the evidence on January 27, 1982, the Appellant was found guilty as charged by a jury. At the sentence hearing immediately following the trial, the Appellant, upon hearing evidence, was adjudged a habitual felony offender and sentenced to fifteen (15) years in the penitentiary of the State of Alabama (C. 6).
“On February 24, 1982, counsel for the Appellant filed motion for a new trial alleging violation of the Appellant’s Fourth Amendment Rights due to an unlawful investigatory stop (CR. 7). The time for hearing said motion was extended by the Circuit Court for Thirty (30) days on March 19, 1982 (CR. 9). Said motion for a new trial was denied on April 18, 1982 (CR. 10).”
Appellant has not predicated his insistence on a reversal of the judgment of conviction on any conduct of Officer Press-nell or any other officer subsequent to the investigatory stop by Officer Pressnell of the defendant and the motor vehicle he was driving. The defendant did not testify, and no witness testified in his behalf. We regret to have to say that his wife and their young child were in the automobile with defendant at the time and that his wife was pregnant. However, we are pleased to *145 state that it was apparently understood by all concerned that the wife was not in parti-ceps criminis in the act of burglary by defendant.
Since Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the appellate courts of Alabama, as well as the appellate courts of other states and the appellate courts of the United States, have consistently applied the principle applied in Terry v. Ohio, that the stop of a motor vehicle by a law enforcement officer that is merely investigatory does not constitute an unreasonable search or seizure, even though the officer does not at the time have probable cause to make an arrest, that he may stop the automobile without violation of anyone’s right to security against unreasonable searches and seizures provided by the Fourth Amendment to the Constitution of the United States, if the circumstances are such that the officer suspects, and has reasonable grounds to suspect, that the driver of the automobile or any other occupant thereof has just recently committed, or is in the process of committing, a felony. Racine v. State, 51 Ala.App. 484, 286 So.2d 890, cert. denied, 291 Ala. 684, 286 So.2d 896 (1973); Bagnoy v. City of Birmingham, Ala. Cr.App., 371 So.2d 80 (1979); Butler v. State, Ala.Cr.App., 380 So.2d 381, 383 (1980); Minnifield v. State, Ala.Cr.App., 390 So.2d 1146, 1157, writ denied, 390 So.2d 1154 (Ala.1980).
With remarkable prescience the Legislature of Alabama enacted, more than a year before Terry v. Ohio, the following, as it now appears in Code of Alabama 1975, § 15-5-30:
“A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal, or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions.”
Notwithstanding the variety of meanings that have been found by courts in the expression “public place” as found in a variety of enactments, we do not think it can be seriously questioned that the place where the investigatory stop was made in the instant case was a public place. In United States v. Sherriff, 546 F.2d 604, 607 (5 Cir.1977), in considering whether the area where the investigatory stop was made, a “parking area beside his [defendant’s] mobile home,” the court stated at 546 F.2d 607:
“... The area involved was a ‘public place’ for purposes of fourth amendment analysis, see, e.g., United States v. Santana, 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976), i.e., appellant could have no reasonable expectation of privacy thereon....”
Any expectation of privacy in the instant case would have been even more un reasonable than it would have been in United States v. Sherriff. The application for rehearing should be overruled.
OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
All the Judges concur.
ON RETURN TO REMAND
LEIGH M. CLARK, Retired Circuit Judge.
On May 24, 1983, there was filed with this Court a return to its previous order remanding the case conditionally with directions as to sentence, by which return we are informed “that,the trial court has entered an order that the sentence heretofore imposed by the Court is not to be reduced.” In accordance therewith and in accordance with the opinion of this Court on original submission and on rehearing affirming the judgment of conviction, the judgment sentencing defendant to imprisonment for fifteen years should also be affirmed.
*146 JUDGMENT OF SENTENCE AFFIRMED.
All the Judges concur.

. Officer Pressnell’s testimony on the point in the presence of the jury was as follows:
“A. I opened the door of my patrol vehicle. As I exited the door, I would be looking directly into the back portion of this other vehicle.
“Q. Let me ask you thisi I believe you said you were approximately two feet away from this other vehicle. Were you able to open your door fully?
“A. No, sir, not fully.
“Q. As you looked directly into the back of the other vehicle would you describe what you saw therein, if anything?
“A. Yes, sir. There was a heaping pile of copper wiring and there was a tire sitting up in the back seat. In other words, the wire and copper tubing was piled up above the window height of the vehicle next to me. In other words, I could see the material before I got out of the patrol vehicle. There was no trouble seeing because of the way the material was piled up in the car.”