The appellant, Robert Earl Walton, was indicted by the Jefferson County Grand Jury for violating Section 13A-11-72 (a) of the Alabama Criminal Code, which specifically states: "No person who has been convicted in this state or elsewhere of committing or attempting to commit a crime of violence shall own a pistol or have one in his possession or under his control." Code of Alabama, 1975. The appellant was arraigned, at which time he entered a plea of not guilty.
Subsequently, appellant filed a motion to suppress evidence that the State intended to use at trial which was secured through a warrantless search and seizure of appellant's van on August 13, 1981.
A review of the facts reveals that the Birmingham Police Department received a call in the early morning hours of August 13, 1981, stating that a black male without a shirt was behind a local fast-food restaurant in a concrete block enclosure.
Officer Lawrence Kornegay testified at the hearing on the motion to suppress which was held prior to the trial and outside the presence of the jury, that he responded to the call. Officer Kornegay stated that he searched the area of the fast-food restaurant by riding around in his patrol car. Approximately one-half block from the restaurant, the officer located a van with tinted windows. Officer Kornegay testified that as he approached the van he noticed movement in the front of the van and that he observed three individuals in the van, two of whom were black males without shirts. The officer further testified that he observed a syringe on the dash console and saw the two males "taking their hands and placing them under a mattress in the back of the van." After ordering the individuals to exit the van, Officer Kornegay stated that he stepped into the van to remove the syringe. It was while he was performing this task that he noticed *Page 896 
a pill bottle in open view in the compartment console. The bottle appeared to contain a controlled substance commonly called "blues."
Officer Kornegay, with the assistance of Officer M.S. Paschall, then ran the appellant's name through the police department and learned of a prior conviction for theft of property and two outstanding warrants on the appellant. One warrant was for riding a motorcycle without a helmet and the other was for failing to report a traffic accident. Appellant was then arrested and taken into custody and the van searched. (The record is somewhat unclear as to the exact sequence of the arrest and search.) A search of the van produced two revolvers; two stockings, each with one end tied; two pairs of gloves; and two toboggans. The revolvers were both loaded and were found under the mattress at the rear of the van.
The trial court overruled appellant's motion to suppress the pistols found in the van, but ordered that the other evidence, namely the stockings, gloves, and toboggans, not be introduced. However, during the trial the court did allow the admission of the additional evidence.
We must first decide whether the law enforcement official had sufficient probable cause to stop and search the appellant's van and then decide concurrently whether the trial court properly overruled the appellant's motion to suppress the fruits of the search, namely the two revolvers.
As to the issue of sufficient probable cause for the stop, the instant case is not so unlike a previous case decided by this court. In Butler v. State, 380 So.2d 381 (Ala.Crim.App. 1980), law enforcement officers received a telephone call in the early morning hours from a caller who stated that she had seen a small dark shadow run around a service station and that a red automobile was nearby in a "dangerous position." A law officer then investigated, found the car, and noticed its occupants reacting "suspiciously" in response to the appearance of the law enforcement officer.
The appellant in Butler, supra, asserted that the law enforcement officer did not have probable cause to stop the automobile because the officer did not know that the service station had been burglarized until after the stop was made.Butler, supra, relied on Terry v. Ohio, 392 U.S. 1, 22,88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968), in responding to appellant's contention. Terry, supra, stated that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." Terry, supra, went on to hold that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," a stop is permissible. Furthermore, §15-5-30, Code of Alabama, 1975, reads:
 "A sheriff or other officer acting as sheriff, his deputy or any constable, acting within their respective counties, any marshal, deputy marshal or policeman of any incorporated city or town within the limits of the county or any highway patrolman or state trooper may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions." (emphasis added)
Bagony v. City of Birmingham, 371 So.2d 80, 81 (Ala.Crim.App. 1979), also established the principle that a detention for the purpose of investigation may be based upon circumstances falling short of probable cause to make an arrest. See alsoVogel v. State, 426 So.2d 863 (Ala.Crim.App. 1980).
 "`A peace officer may in appropriate circumstances and in an appropriate manner approach or accost a person for the purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. A policeman who lacks the precise level of information necessary for probable cause to arrest is not required simply to shrug *Page 897 
his shoulders and allow a crime to occur or a criminal to escape, and a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information may be most reasonable in light of the facts known to the officer at the time.'"
 6A C.J.S. Arrests § 38 (1975), as cited in Spradley v. State, 414 So.2d 170, 173
(Ala.Crim.App. 1982).
The information available to the officer in the instant case would merit a law enforcement officer's intrusion into the appellant's activities. Factors that cast favor on the officer's actions are the unusual hour, a call about an individual's suspicious conduct, the proximity of the appellant's van to the fast-food restaurant, and the actions of the occupants of the van upon the arrival of the law enforcement vehicle. See Racine v. State, 51 Ala. App. 484,286 So.2d 890 (1973); Luker v. State, 358 So.2d 504 (Ala.Crim.App. 1978). All of these factors made the officer's "investigatory actions" proper and neglect to take those actions would have amounted to poor professional judgment. Butler, supra. Therefore, probable cause existed for the investigatory stop of appellant's van.
Having determined that there was probable cause for the investigatory stop, we must now consider whether there was sufficient probable cause for the subsequent search, seizure, and arrest.
The Alabama Supreme Court listed six circumstances in Danielsv. State, 290 Ala. 316, 276 So.2d 441 (1973), that allow law enforcement officers the authority to conduct a search without the formality of a search warrant. The six circumstances are:
 "(1) In `plain view', see Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971);
 "(2) (With `consent' voluntarily, intelligently and knowingly given, see Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) and Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938);
 "(3) As `incident to a lawful arrest,' see Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960); Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959);
 "(4) In `hot pursuit' or `emergency' situations, see Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); State v. Sutton, (Mo. 1970) 454 S.W.2d 481;
 "(5) Where `exigent circumstances' exist coincidental with `probable cause' (as in the case of movables), see Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); and,
 "(6) In `stop and frisk' situations, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968)."
290 Ala. at 318, 276 So.2d at 443-44.
The officer's "investigatory actions" commenced with his observation of three individuals in a van. As stated earlier, upon closer scrutiny, the officer discovered that two black males were busily placing their hands under a mattress in the rear portion of the van. The officer also noticed a syringe on the dash console in "plain view," and in an effort to retrieve the syringe from the van, he discovered a bottle containing what he considered to be "blues."
The "plain view" and the "exigent circumstances . . . coincidental with probable cause" exceptions to the general rule requiring a search warrant as set out in Daniels, supra, justified the officer's action in the case at bar, the action of conducting a warrantless search of the van. Rose v. City ofEnterprise, 52 Ala. App. 437, 293 So.2d 862 (1974). The facts in an applicable search case, Jones v. State, 432 So.2d 19
(Ala.Crim.App. 1983), were as follows: appellant was stopped for violating a traffic law; as the law enforcement officer approached appellant's vehicle he could smell the odor of marijuana; through the window the officer observed a hand-rolled cigarette and hand-rolled cigarette butt; and the officer saw appellant placing "something" beneath *Page 898 
the car ashtray. The court in Jones, supra, held that probable cause existed to search under the "plain view" and the "exigent circumstances . . . coincidental with probable cause" exception detailed in Daniels, supra. Jones, supra, went on to state that it was after these observations by the police officer that the vehicle was searched, the incriminating evidence found, and the appellant arrested.
In the instant case, the syringe and "pills" found in plain view, along with the other observations which justified the stop, merited further investigation and the search of the van for other contraband. The record is silent as to what specifically the officer was searching for when he conducted the search, but we may assume that the officer suspected that other drugs were secreted in the van. Therefore, the pistols were found pursuant to a valid warrantless search and the trial court properly overruled appellant's motion to suppress.
Secondly, the appellant asserts that the trial court erred in allowing into evidence the two pairs of gloves, two toboggans, and two stockings, over the objections of the appellant. Appellant avers that the above items had no probative value and were highly prejudicial to the appellant when submitted into evidence. We disagree.
It appears from the record that the State did not attempt to introduce the above items into evidence in its case-in-chief. Rather, the items were introduced to rebut the appellant's ex-wife's testimony that the van was in her exclusive possession.
Sprinkle v. State, 368 So.2d 554 (Ala.Crim.App. 1978), writquashed, 368 So.2d 565 (Ala. 1979), held that the State may, at the discretion of the trial judge, introduce in rebuttal any competent evidence which explains or which is in direct reply to, or contradiction of, material evidence introduced by the defendant/appellant. Such is the case at bar. The items introduced contradicted the assertions of one of the appellant's witnesses. Furthermore, where evidence is admissible for one purpose, the trial court may receive the evidence, despite the fact that there may exist some other purpose for which it is not admissible. When such evidence is admitted against an appellant, it is the appellant's sole responsibility to request that the court instruct the jury as to the limited and proper purpose for which such evidence is admitted. Failure to make such a request may equal a waiver of the right to the protective instruction. See Miller v. State,405 So.2d 41 (Ala.Crim.App. 1981), and Robinson v. State,361 So.2d 379 (Ala.Crim.App.), writ denied, 361 So.2d 383 (Ala. 1978). A search of the record revealed that the appellant made no such request for the protective instruction. Therefore, the items were properly admitted into evidence at the trial court's discretion, and error cannot be sustained for the court's failure to indicate to the jury for what purpose the evidence should be considered.
Finally, we must decide if appellant's prior unclassified felony convictions were properly used to enhance his punishment.
Appellant argues that since his prior felony convictions were not classified as either "A", "B", or "C", they should not have been used pursuant to Section 13A-5-9, Code of Alabama, 1975, to enhance his punishment. Moreover, appellant contends that his convictions prior to 1980 should not have been considered at all.
It is well settled law in Alabama that a felon's convictions prior to 1980 may be used to enhance punishment for subsequent felony convictions. James v. State, 405 So.2d 71 (Ala.Crim.App. 1981), held that the intent of the legislature in passing the Habitual Felony Offender Act was to "authorize the infliction of a more severe penalty on one who is a persistent offender regardless of when the prior convictions occurred and even if they occurred before the enactment of the act." See also Wilsonv. State, 371 So.2d 932 (Ala.Crim.App. 1978), and Lidge v.State, 419 So.2d 610 (Ala.Crim.App. 1982).
As to the appellant's contention that "unclassified" felonies should not be used to enhance punishment, we totally disagree. *Page 899 
It is obvious that the trial court sentenced the appellant under Section 13A-5-9 (c)(1), Code of Alabama, 1975, which reads:
 "(c) In all cases when it is shown that a criminal defendant has been previously convicted of any three felonies and after such convictions has committed another felony, he must be punished as follows:
 (1) On conviction of a Class C felony, he must be punished by imprisonment for life or for any term not more than 99 years but not less than 15 years." (emphasis added)
Watson v. State, 392 So.2d 1274 (Ala.Crim.App. 1980), concluded that while the Habitual Felony Offender Act is mandatory, the trial court has the option of sentencing the appellant to life imprisonment or to any term not more than 99 years. Therefore, the trial judge is accorded discretion in such instances as the case at bar, to consider the appellant's prior felony convictions and determine the appropriate length of the sentence in compliance with the guidelines detailed in the statutes.
Furthermore, we should point out that all that is required to set the Habitual Felony Offender Act into motion is a previous felony conviction. Section 13A-1-2 (4), Code of Alabama, 1975, defines a felony as "[a]n offense for which a sentence to a term of imprisonment in excess of one year is authorized by this title." The three convictions considered by the trial judge in enhancing our appellant's conviction were all convictions greater than one year, thus bringing into consideration Section 13A-5-9 (c)(1), Code of Alabama, 1975, as cited earlier.
In the present case, the trial court did not abuse its discretion. The appellant's punishment was within the range prescribed by the applicable statute. Based upon the above facts and principles of law, we are of the opinion that the trial court's reliance on the three previous unclassified felony convictions to enhance appellant's punishment, did not violate either the Alabama Constitution or the Constitution of the United States. Accordingly, the Habitual Felony Act was properly invoked.
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. Therefore, the judgment of the court below is affirmed.
AFFIRMED.
All the Judges concur.