HUBERT TAYLOR, Judge.
Appellant was found guilty of possession of marijuana. Sentence was fifteen years and fifteen thousand dollars.
On November 15,1981, Assistant Chief of Police, Joseph McGrue, responded to a call for police assistance at LeHouse Club, a social club across the street from Selma’s City Police Department. Appellant and others were standing outside the club when the Chief arrived. Appellant told the Chief that he had been threatened; the Chief advised him to leave the downtown area. The appellant got into his automobile to leave but was blocked by a city patrol car. When the patrol car moved, appellant drove away. As appellant drove off, the Chief told Officers Weber and Matthews, who had just pulled up, “[T]o go down and check him out to see if he had a driver’s license because I didn’t believe he did.”
Officers Weber and Matthews followed appellant and eventually stopped him. Chief McGrue followed the two officers in his own patrol car and was on the scene for a short time after appellant was stopped. When appellant could not produce a driver’s license, he was placed under arrest and searched. Marijuana was found in appellant’s clothing and car.
The only real issue in this case is whether the initial stop of the car was lawful. If so, the search incident to arrest was lawful and the evidence admissible; if not, the evidence should not have been admitted. The case of Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), is relevant to the issue presented. In that case, the patrolman, prior to stopping the vehicle, observed neither traffic or equipment violations nor any suspicious activity. The court said that the Fourth Amendment imposes a standard of reasonableness upon the exercise of discretion by government officials. This was taken to mean that the facts upon which an intrusion is based must be capable of measurement against an objective standard. The court held “[T]hat except in those situations which there is at least ar-ticulable and reasonable suspicion that a motorist is unlicensed .. ., stopping an automobile and detaining the driver in order to check his driver’s license is unreasonable under the Fourth Amendment.” 440 U.S. at 663, 99 S.Ct. at 1401.
In the case sub judice, all the officers involved, McGrue, Weber, and Matthews, testified that they had not seen the appellant do anything suspicious or violate any traffic laws. The only reason for stopping the car was Chief McGrue’s belief that appellant did not have a driver’s license. The basis for Chief McGrue’s belief was that he had arrested appellant for driving without a license at least a year prior to the night in question.
The State contends that Officers Weber and Matthews made the stop and, at the time, had reasonable suspicion that appellant had no license because of a reliable informer’s tip, namely, Chief McGrue. This argument is without merit. Chief McGrue made the stop; he simply used Officers Weber and Matthews as the agents or tools whereby he effected the stop. He ordered them to stop appellant. He followed them to make certain his order was obeyed. Additionally, the knowledge of one officer is imputed to others working on the same case so that the validity of the stop would still *1018 have to rest on whether McGrue had a “reasonable suspicion,” Knight v. State, 346 So.2d 478 (Ala.Cr.App.1977).
This court dealt with the issue of stopping a vehicle with less than probable cause , in the case of Johnson v. State, 406 So.2d 446 (Ala.Cr.App.1981). There, the police officer had several facts before him: (1) a robbery had just been committed, (2) he had observed appellant’s car a short distance from the store only moments after the radio dispatch concerning the robbery had been received, (3) the appellant’s car was the only vehicle on the road, and (4) immediately prior to stopping appellant’s car, he had seen several people near the store pointing in the direction of appellant’s car.
This court found that the officer “had specific and articulable facts before him from which he could have formed a reasonable suspicion that appellant had been involved in the robbery.” 406 So.2d at 448. Other cases in which facts within the stopping officer’s knowledge created an ar-ticulable and reasonable suspicion sufficiently strong to support an identity check include: United States v. Demanett, 629 F.2d 862 (3rd Cir.1980) (Coast Guard officer noticed boat that was rigged for a type of fishing not done in the area, trawl doors were lashed in place on deck, deck was clean, gear appeared not to have been used for a long time, and name of boat was not permanently affixed but printed on placard hung over stern); United States v. Miller, 507 F.Supp. 1347 (D.Md.1981) (officer noticed young black male near bank who closely fit description of bank robber; the male was on a bicycle of the type used in the getaway the day before); United States v. Turner, 474 F.Supp. 444 (E.D.Wis.1979) (officer had received suspicious vehicle call, the car was seen within one mile of the robbery, the slovenly appearance of the driver did not match the appearance of the car, the out-of-state tag was out of place on a small county road used only by local residents, the car was being driven in a very cautious manner; prior to this time the car had been noticed in a deserted area over a considerable length of time).
Cases which have held the stop and seizure to be unreasonable include: United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975) (Border Patrol officer stopped vehicle near the Mexican border to question its occupants about their citizenship and immigration status when the only ground for suspicion was that occupants appeared to be of Mexican ancestry); Berryhill v. State, 372 So.2d 355 (Ala.Civ.App.1979) (officer decided to check driver of vehicle for license because the vehicle was clean and freshly painted with a Florida tag which led officer to believe it was transporting illegal liquor).
We feel that Chief McGrue had no articu-lable or reasonable suspicion for stopping appellant’s car. The trial reflects a cross examination of Chief McGrue which is pertinent to our finding and reads as follows:
“Q. And you knew that he drove an automobile?
“A. Yes, Sir; I knew.
“Q. Because you had seen him in that automobile many times.
“A. Not this particular automobile.
“Q. But you had seen him driving?
“A. Right.
“Q. Had you ever stopped him?
“A. Yes.
“Q. For no driver’s license?
“A. Yes.
“Q. And arrested him?
“A. Yes.
“Q. And in point of time, Chief, the time you arrested him for no driver’s license, vis-a-vis, November 5th, was it one month before or two months or what have you—
“A. It had been at least a year, if I understand your question.
“Q. At least a year?
“A. Yes.
“Q. So you were speculating the possibility that he may not have one?
“A. That’s right.”
*1019 Nowhere in the record is there any evidence that the appellant had his license suspended, cancelled, or revoked. He was, according to the record, merely arrested for driving without a license at least one year prior to the night in question.
The penalty for driving without a license is a fine of not less than $10 nor more than $100, Ala.Code § 32-6-18 (1975). There appears to be no reason why one convicted of driving without a license could not immediately reapply and receive a valid driver’s license. Even assuming, apart from the record, that the Chief had some knowledge that the appellant’s license had been suspended or revoked, that status usually lasts for a year or less. Ala.Code § 32-5A-195 (1975). The Chief did not have a reasonable suspicion but was merely speculating, as he admitted on cross examination.
The lack of reasonable suspicion on the part of the Chief is further supported by the fact appellant had been seen driving prior to the time of the stop. No attempt was made to check appellant’s license. The Chief did not inquire about appellant’s license when the car was blocked. Then, after sending another patrol ear out on a routine task to cheek appellant’s license, the Chief felt that it was necessary to follow in his own car. In addition, the Chief admitted that he was suspicious of appellant’s drug related activities. A traffic officer may not stop an automobile and ask to see the operator’s license as a ruse in an intended search for evidence of some possible crime unrelated to the possession of a driver’s license merely to avoid the requirements of a search warrant. Lipton v. United States, 348 F.2d 591 (9th Cir.1965).
Regardless of the true motive that prompted the stop, we conclude the stop was unlawful. The placing of reasonable restraints on the right of the State to interfere with personal liberty is not an unreasonable burden.
The judgment of the lower court is reversed and this cause remanded.
REVERSED AND REMANDED.
All the Judges concur.