TAYLOR, Presiding Judge.
The appellant, Mark Sawyer, was convicted in Perry County District Court of failure to stop at a stop sign in violation of § 32-5A-112, Code of Alabama 1975, and attempting to elude a police officer in violation of § 32-5A-193, Code of Alabama. He waived a jury trial in circuit court and appealed directly to this court upon a stipulation of facts pursuant to Rule 30.2, Ala.R.Crim.P.
The district court’s stipulation of facts tended to show that on October 1, 1993, the appellant was stopped at a red light at an intersection in the west bound lane. Officer Clyde Carter of the Marion Police Department approached the intersection in the north bound lane in a marked patrol car. Before Carter reached the intersection, the light changed from green to red and Carter stopped. The appellant turned left at the intersection, heading south, and he passed by Carter’s vehicle. Carter testified that he recognized the appellant as someone whose driving privileges he knew had been suspended. He turned on the blue lights on his patrol car, turned around in the intersection, and headed south to stop the appellant. Carter pursued the appellant for several blocks with his blue lights flashing. He finally turned on his siren, and the appellant stopped. Carter ticketed the appellant for attempting to elude a police officer, failure to stop at a stop sign, and reckless driving.
The appellant contends on appeal that evidence of his prior traffic violations should have been suppressed and his convictions reversed because, he says, Officer Carter’s *114 reason for stopping him violated his rights pursuant to the Fourth Amendment to the United States Constitution and Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Specifically, he contends that Carter’s belief that the appellant’s driving privileges had been suspended did not rise to the level of a reasonable suspicion to believe he was violating the law, as required by Terry.
The appellant bases his contention primarily on the United States Supreme Court’s holding in Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and this court’s holding in McReynolds v. State, 441 So.2d 1016 (Ala.Cr.App.1983). In Prouse, a police officer stopped a motorist at random to see if he had a driver’s license. The United States Supreme Court held:
“[E]xcept in those situations where there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver’s license and the registration of his automobile are unreasonable under the Fourth Amendment.”
Prouse, 440 U.S. at 663, 99 S.Ct. at 1401, 59 L.Ed.2d at 673. In McReynolds, police stopped a motorist, believing that he was driving without a license because he had been arrested for that same offense over a year earlier. This court, following the holdings of higher courts, held that the police lacked reasonable suspicion for a stop under Terry. In the present case, we need not reach the question whether there was reasonable suspicion for a Terry stop unless such a stop occurred.
Therefore, in this case we must first decide whether a Terry “stop” or “seizure” occurred when Officer Carter observed the appellant fail to stop at a stop sign and elude him while Carter was following him in his patrol car with his blue lights flashing. This decision is controlled primarily by the United States Supreme Court’s interpretation of the Fourth Amendment and Terry. As this court recently stated in Seeley v. State, [Ms. CR-93-1739, March 24, 1995], — So.2d -,-(Ala.Cr.App.1995):
“State courts are bound by the interpretations given to the Fourth Amendment by the United States Supreme Court. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.[2d] 1081 (1961); Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). If we ignore [the United States Supreme Court] we would be ignoring our duty to uphold the Constitution and would be setting the stage for almost certain reversal by a higher court.”
The Supreme Court has repeatedly stated the test for whether a “seizure” had occurred. “A person has been ‘seized’ within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.” California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991); Michigan v. Chesternut, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).
The Supreme Court in Hodari D. further defined what constitutes a “seizure” under the above test. “In [Hodari D. ], the United States Supreme Court held that a seizure does not occur when, without more, a police officer makes a ‘show of authority’ to an individual and the individual fails to yield to the officer’s authority.” Hopkins v. State, 661 So.2d 774, 777 (Ala.Cr.App.1994). The Court in Hodari D. stated:
“Hodari contends (and we accept as true for purposes of this decision) that [the police officer’s] pursuit qualified as a ‘show of authority’ calling upon Hodari to halt. The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does .not.
“... The word ‘seizure’ readily bears the meaning of a laying on of hands or application of physical force to movement, even *115 when it is ultimately unsuccessful. (‘She seized the purse-snatcher, but he broke out of her grasp.’) It does not remotely apply, however, to the prospect of a policeman yelling ‘Stop, in the name of the law!’ at a fleeing form that continues to flee. That is no seizure.”
Hodari D., 499 U.S. at 625-26, 111 S.Ct. at 1550, 113 L.Ed.2d at 697. (Footnote omitted.) “Thus, a seizure requires either physical control over the suspect, or the suspect must in some form submit to the officer’s show of authority.” Hopkins, 661 So.2d at 777.
Here, the appellant had not yielded to Officer Carter’s show of authority, i.e. Carter’s following the appellant while flashing his blue lights, after Carter observed him fail to stop at the stop sign. His failure to yield to that show of authority constituted an attempt to elude Officer Carter. The appellant contends that he could not have known whether to stop because Carter turned on his blue lights but not his siren. However, police are not required to turn on a siren in order to stop a motorist. Section 32-5A-193, Code of Alabama 1975, provides that a police officer need only give “a visual or audible signal to bring the vehicle to a stop.” “The signal given by the police officer may be by hand, voice, emergency light or siren.” § 32-5A-193, Code of Alabama 1975. (Emphasis added.)
We hold that there was no “stop” or “seizure” when Carter, following the appellant with his blue lights flashing, saw the appellant commit the traffic violations he was charged with. A police officer may arrest any person without a warrant for any public offense committed in his presence. § 15-10-3, Code of Alabama 1975. Therefore, we do not need to address the appellant’s contention regarding Terry.
For the foregoing reasons, the judgment in this ease is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.