David Matthew Kemp was charged by indictment with the offense of having in his possession or under his control, one .38 caliber pistol, in violation of § 13A-11-72 (a), *Page 300 
Code of Alabama 1975, after having been convicted of the offense of grand larceny in Jefferson County, Alabama. The jury found the appellant "guilty of owning or having in his possession, or having under his control, a pistol after having been convicted of a crime of violence as charged in the indictment." Following a habitual offender hearing at which six prior felonies were placed in evidence, the appellant was sentenced to 35 years' imprisonment.
Judith Charlene Kirkland an eleven-year police officer with the Birmingham department stated she was on the "eleven to seven" patrol in the Roebuck area of the City of Birmingham on the early morning of October 30, 1981. Officer Kirkland testified that she was driving in approximately the 700 Block of Old Springville Road when she noticed a light colored Pontiac LeMans coming into the parking lot area of a shopping center from the rear of the buildings which were dark. She stated that the vehicle in question was coming from behind the "Woolco Shopping Center" at a high rate of speed. She estimated the speed at between 35 and 40 miles per hour and indicated that this occurred about 4 o'clock in the early morning. As she attempted to follow the vehicle across the parking lot, it speeded up, then slowed and then headed into a parking area in front of a Food World grocery store, where the vehicle stopped. Officer Kirkland then alighted from her car and walked over to the vehicle where she first confronted appellant after calling to him twice to stop. As she approached appellant's automobile, she noticed the distinct odor of gasoline and after observing the appellant, she saw an open gasoline can and siphoning hose situated on the rear seat of the vehicle. She asked the appellant for identification and he stated that he had no driver's license and did not have any identification on his person. She then asked him if he was armed, to which he stated no. The officer then looked into the window of appellant's automobile and observed a pistol lying on the front floorboard under the driver's side. She then retrieved this pistol and called to police headquarters giving the registration, RG .38 caliber, serial number 041617 (R. 50). She stated that this pistol contained several live rounds. She then also gave the vehicle registration and identification and asked that an NCIC check be made on same. She stated that the automobile appeared to have been repainted several times and then she proceeded to make an inventory of the automobile. The inventory list established a "night stick, a flashlight, one gas can with gas, fuses, screwdriver, siphoning hose, a tool box, spare tire, a jack and a lug wrench."
Officer Kirkland then carried the appellant over to a Crown Service Station, which is near the shopping center and asked if any of the persons there had sold the appellant any gasoline that evening. No one on duty at that time could identify the appellant, nor could they establish that he had purchased gasoline from them.
Officer Kirkland also stated that she was aware that within several months just preceding the night of this arrest, there had been a drug store burglary and also a burglary of the Hallmark store in the shopping center. She, however, had no recent reports of burglaries or robberies to any of these stores, but stated that there had been several instances of minor thefts from a filling or service station across the street, and also that some vehicles belonging to Huffman High School which was just behind the shopping center, had also been vandalized.
She testified that the appellant, Mr. Kemp, did not have any weapons on his person, but she charged him with driving without a license and after asking for identification, the appellant advised her that he had one prior conviction of receiving stolen property and had served 23 months' on a seven year sentence. The appellant was also charged with the unlawful possession of a firearm after conviction of a felony.
At trial it was established that the appellant obtained a proper motor vehicle registration tag and tax receipt for the Pontiac, which tag receipt was GHY 127 and that the registration was current. However, on the night of the arrest Officer Kirkland was *Page 301 
unable to ascertain a proper registration on the vehicle in question.
At trial the State also established, through the testimony of Mrs. Betty Davis of the Circuit Clerk's Office, Criminal Division, the six prior felonies which included grand larceny, and buying and receiving stolen property, from case action summary sheets, duly certified.
Following the State's evidence, the appellant made a motion to exclude and asked for a judgment of acquittal on the basis that the State failed to prove a prima facie case. The appellant did not testify at trial, nor did he present any evidence.
 I
The appellant urges reversal of this case because the police officer acted without probable cause in stopping his car and thus the incriminating evidence found within the vehicle was illegally obtained and therefore inadmissible.
In Johnson v. State, 406 So.2d 446 (Ala.Cr.App. 1981), we find the following statement:
 "It is clear that the initial stop of the appellant's car constituted a `seizure' within the purview of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). However, probable cause is not always the standard to be applied in situations such as the one sub judice
as it is well recognized that in certain instances an investigatory stop may be made under circumstances that constitute less than probable cause within the commonly accepted meaning of that term. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968). In Terry the United States Supreme Court, in discussing warrantless stops based on less than probable cause stated:
 `[W]e deal here with an entire rubric of police conduct-necessarily swift action predicated upon the on-the-spot observations of the officer on the beat-which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved . . . must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures.'"
As this court stated in Minnifield v. State, 390 So.2d 1146,1152 (Ala.Cr.App.), cert. denied, 390 So.2d 1154 (Ala. 1980):
 "The concept of the investigative stop has been adopted by statute in Alabama, § 15-5-30, et seq., Code of Alabama 1975, and though Terry [v. Ohio supra] was factually concerned with stops of suspicious characters on sidewalks, it is clear from the subsequent decisions of both the United States Supreme Court and the appellate courts of this State that the Terry principle is equally applicable to the stop of a vehicle. . . ."
As Judge DeCarlo pointed out in Miller v. State,423 So.2d 1377 (Ala.Cr.App. 1982):
 "While the officer making the stop is not required to possess a level of knowledge amounting to probable cause, Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), he `must be able to point to specific and articulable facts which, taken together with rational inferences from those facts reasonably warrant investigating.' Terry v. Ohio, 392 U.S. at 21, 88 S.Ct. at 1880."
In the case at bar, the arresting officer testified that she was aware there had been some burglaries in the immediate area within the several months' period just prior to the time of making the arrest of appellant. She was also aware of appellant's conduct in that he emerged from behind a group of buildings in the shopping center in a very dark area, upon noticing her vehicle he speeded up to speeds of 35 to 40 miles per hour and drove in an evasive manner across the lot, then endeavored to slip into a parking place in front of an all night grocery store. Upon driving to the scene where his vehicle had stopped, the officer then approached the car and noticed the distinct odor of gasoline and saw a gasoline container and hose sitting on the back seat of the car. She also, upon looking inside the window, saw a .38 caliber pistol *Page 302 
lying on the floorboard on the driver's side. She asked the appellant for identification, which he was unable to provide, and in fact, had no state driver's license. She also endeavored to run an NCIC check on the vehicle itself and noticed that it had been repainted, as she said, "a couple of times." She then took appellant over to the service station where he allegedly purchased the gasoline and no one there was able to identify him, nor could anyone state that they had made the sale of the gasoline in question.
Moreover, the appellant when being questioned concerning his identity, stated that he had a buying, receiving and concealing stolen property conviction approximately three years earlier, and had served 23 months on this conviction.
We are of the opinion that the officer here related specific and articulable facts which, taken together with the reasonable and rational inferences therefrom, constitute facts upon which the arrest of the appellant was proper. Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). We are further of the opinion that Birmingham Police Sergeant Kirkland acted as a person of reasonable caution in the belief that the action taken was appropriate. Terry v. Ohio, supra.
Appellant's counsel calls our attention to the most recent case of the United States Supreme Court, Kolender, et al., v.Lawson, 455 U.S. 999, 102 S.Ct. 1629, 71 L.Ed.2d 865 (1983). We are of the opinion that counsel's reliance on Kolender is misplaced. This case was one in which the U.S. Supreme Court voided a California statute which required a party not only to stop and identify, but also provided that the identification must be "credible and reliable" and that it have "a reasonable assurance" of its authenticity, and further, that it also provided for "means for later getting in touch with the person who has identified himself ". The California statute also required that the party account for his presence "to the extent it assists in producing credible and reliable identification".
No such set of facts or circumstances are here involved in the case at bar. The arrest of the appellant, Kemp, was strictly pursuant to a Terry v. Ohio investigative stop, as hereinabove pointed out. The facts which evolved from this stop led to sufficient articulable facts and circumstances from which probable cause for the arrest of the appellant arose. This was in all respects proper and in no way in contravention of any constitutional right of Kemp.
 II
Appellant's counsel urges this court to overrule Jackson v.State, 37 Ala. App. 335, 68 So.2d 850 (Ala.Cr.App.), cert. denied, 260 Ala. 698, 68 So.2d 853 (1953). Jackson, supra, upheld the constitutionality of the statute under which appellant is here charged.
Jackson also determined that the crime larceny was one of violence.
We have been called upon most recently in Bristow v. State,418 So.2d 927 (Ala.Cr.App. 1982) to again consider the argument here made by appellant. For the reasons stated in Jackson andBristow, we adhere to the views hereinbefore expressed.
 III
Appellant's counsel also argues that it was not affirmatively demonstrated that the pistol found on the driver's side of appellant's vehicle was in his "possession or control", hence the conviction should be reversed.
It should be first here noted that the evidence at trial affirmatively established that the Pontiac automobile was in fact registered to and the property of the appellant, Kemp. Appellant was alone in the automobile.
The definition of the term "pistol" is found in § 13A-11-70
(1), Code of Alabama 1975.
This court has also dealt with the term "pistol" in the case of Williams v. State, 400 So.2d 427 (Ala.Cr.App. 1981). *Page 303 
Under these authorities, there is no requirement under the applicable Alabama statute that the State establish that the pistol was in good working order. There was no proof offered that the same was not in good working order, nor that any of its parts were missing. To the contrary, Sergeant Kirkland established that the pistol was in good working order and, in fact, contained several live rounds. We reject the argument offered by counsel.
 IV
Appellant asserts that he, the appellant, was denied due process and equal protection of law in that being sentenced as a habitual offender constituted cruel and unusual punishment.
This contention was rejected by this court in Watson v.State, 392 So.2d 1274 (Ala.Cr.App. 1980), cert. denied,392 So.2d 1280 (Ala. 1980).
Moreover, the appellant's argument that the three prior convictions which were all had on the same date should be treated as one conviction for habitual offender purposes, rather than three, has also been rejected expressly by this court in Serritt v. State, 401 So.2d 248 (Ala.Cr.App. 1981), cert. denied, 401 So.2d 251 (Ala. 1981) and Bates v. State,405 So.2d 1334 (Ala.Cr.App. 1981), cert. denied, 405 So.2d 1339
(Ala. 1981).
The appellant also argues that to use his prior offenses, which occurred before the date of the enactment of the current Alabama Habitual Offender law is also unconstitutional. This argument was expressly rejected by this court in Thatch v.State, 397 So.2d 246 (Ala.Cr.App.) cert. denied, 397 So.2d 253
(Ala. 1981).
 V
Appellant finally asserts that to use certified copies of trial docket sheets as proof of the prior convictions instead of proving same through certified minutes entries was erroneous.
Act number 1037, Acts of Alabama Legislature 1971, expressly authorized the use of trial docket sheets as proof of Jefferson County, Alabama convictions. These were proven in the case at bar as is shown on record page 130.
The provisions of this statute are controlling with reference to the admission of these Jefferson County convictions, hence no error has been made to appear on this question. Julius v.State, 407 So.2d 141 (Ala.Cr.App. 1980), rev'd on other grounds, 407 So.2d 152 (1981).
We have carefully examined this record and find same free of error. The judgment appealed from is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 728