Herman Ousley Ervin, the appellant, was convicted of robbery in the first degree and was sentenced to life imprisonment as a habitual felony offender. He raises two issues on this appeal from that conviction.
 I.
The appellant maintains that his initial arrest for public intoxication was illegal, and that, consequently, his subsequent arrest for resisting arrest and assault in the third degree and the search of the automobile were all illegal. We disagree.
On January 3, 1991, Gadsden police officer Brian D. Bostick observed an automobile "speeding rapidly off" from Krystal's parking lot and traveling at a "very high rate of speed" and "in a reckless manner." R. 23, 46, 98. He pursued that car at a high rate of speed for approximately one and one-half miles. The vehicle ran around a roadblock where a road was closed and eventually stopped in the "projects."
The appellant was the passenger in this automobile.
Once stopped, the driver was removed from the car and given field tests for driving under the influence of alcohol. A large amount of currency was observed inside the vehicle — on the seat, on the floor, and in the console — by both Officer Bostick and Officer R. Sam Barnes, who had arrived to assist Officer Bostick. When questioned, the appellant and the driver repeatedly contradicted themselves about the source and ownership of the money. The appellant had no identification. Neither the appellant nor the driver could produce proof of ownership of the vehicle, which did not have an ignition key or a key switch. The appellant, while sitting inside the vehicle, was holding a white paper bag labeled "Krystal" which contained a brown paper bag. The appellant acted in a very nervous and "excitable" manner.
Officer Barnes ordered the appellant out of the vehicle as a safety precaution so he "could watch his hands and see if there was no weapons in the car." Barnes testified:
 "When you're making a stop especially in an area which we were in that we have had a high crime rate, and where the vehicle's not registered to the driver, and the person has no proper ID on him, and also the action of the person, very nervous, whatever, we will take them out of the car to make sure there are no weapons or see if we can find any proper ID concerning either the car or the person. More of a safety factor more than anything else." R. 113-14.
When the appellant exited the automobile, he left the paper bag he had been clutching inside the vehicle. The officers radioed the dispatcher to inquire whether there had been any recent robberies. Subsequently, the appellant *Page 117 
became extremely loud, boisterous, and began using profane language. This behavior led Officer Barnes to warn the appellant that he was going to be arrested for public intoxication and disorderly conduct. About that time, the officers received a radio transmission that another agency had requested a description of both the vehicle and its occupants. R. 115. Although it is not entirely clear from the record, it appears that at this time the officers also received information "about the robberies in one of the local areas." R. 104. The decision was made to hold the appellant and the driver for further investigation. When one of the officers went to handcuff the appellant, the appellant struck the officer and fled. There was testimony that the appellant fled when he heard the radio transmission "[t]hat a robbery had occurred in Anniston and Piedmont and Jacksonville." R. 107. The appellant was captured a short distance away, was returned to the scene, and was placed in a patrol vehicle. The officers then received a radio dispatch that the City of Piedmont was looking for the vehicle and that the driver and the appellant fit the description of the suspects in several robberies. R. 107.
The officers' conduct in this case was both reasonable and responsible. "[W]hile mere suspicion, without more, is not sufficient justification for stopping a vehicle, if the officer can point to independent facts which lead to his 'articulable and reasonable' suspicion that the . . . occupants [of the vehicle] have violated some law, then stopping the vehicle would be justified under the fourth amendment." Ex parte Yeung,489 So.2d 1106, 1109 (Ala. 1986). "The Terry [v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)], rationale . . . permits police officers to stop a moving automobile based on a reasonable suspicion that its occupants are violating the law. . . . Reasonable suspicion is determined from the totality of the circumstances. . . ." United States v. Williams,876 F.2d 1521, 1524 (11th Cir. 1989). Here, Officer Bostick's personal observation of the reckless manner in which the automobile was being driven provided a sufficient basis for an investigative stop of that vehicle. See Kemp v. State, 434 So.2d 298
(Ala.Cr.App. 1983).
"Once a police officer with reasonable suspicion has stopped a suspect in an automobile, the officer has the authority to ask the suspect to get out of the automobile. . . . The need to protect police and others justifies protective searches when police have a reasonable belief that the suspect poses a danger. Roadside encounters between police and suspects are hazardous, and danger may arise from the possible presence of weapons in the area surrounding a suspect." Ex parte Carpenter,592 So.2d 627, 631 (Ala. 1991). See also Pennsylvania v. Mimms,434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). "[T]he search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049,103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983) (footnote omitted).
A suspect who has been validly stopped "may be detained while it is determined if in fact an offense has occurred in the area." 3 W. LaFave, Search and Seizure § 9.2(f) at 378 (2d ed. 1987). While "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop," Florida v. Royer, 460 U.S. 491, 500, 103 S.Ct. 1319,1325, 75 L.Ed.2d 229 (1983), "an officer whose suspicions are not allayed is justified in holding the suspect for an additional period of time in order to conduct further investigation such as referral to a central data bureau. . . ." 1 W. Ringel, Searches and Seizures, Arrests and Confessions § 13.5(a) at 13-50 (1991). See Dalton v. State, 575 So.2d 603,605 (Ala. 1990) (investigatory detention lasting between 40 and 60 minutes was not unreasonable under the circumstances).
Apparently, the search of the vehicle occurred while the driver of the automobile was being given field tests for DUI but *Page 118 
before he was formally placed under arrest. The vehicle was searched "to check and see if there was any kind of weapons or any kind of valuables in the car." Officer Barnes testified, "At that time we were starting an inventory search to see what was in the car because the driver of the car [who was being arrested] would not release the car to anyone else." R. 27. The seizure of the money from the inside of the automobile was not the fruit of an illegal search and seizure because the money was in plain view. See Poole v. State, 596 So.2d 632
(Ala.Cr.App. 1992).
 "A valid investigative stop of a suspect often puts the police officer in a position to see things which could not ordinarily be seen were the suspect not detained. The increased ability to examine the suspect is particularly relevant in an automobile stop, where the interior of the vehicle as well as its occupants become subject to the scrutiny of the officer."
1 Ringel at § 13.8 at 13-68. "When police officers have probable cause to believe there is contraband inside an automobile that has been stopped on the road, the officers may conduct a warrantless search of the vehicle." Griffin v. State,579 So.2d 35, 37 (Ala.Cr.App. 1991) (citing Chambers v. Maroney,399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970)). Here, the appellant did not object on the ground that the inventory itself was improper. Compare Ex parte Boyd, 542 So.2d 1276
(Ala.), cert. denied, 493 U.S. 883, 110 S.Ct. 219,107 L.Ed.2d 172 (1989).
Furthermore, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." New York v. Belton,453 U.S. 454, 460, 101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981) (footnotes omitted), quoted in Gundrum v. State, 563 So.2d 27,28 (Ala.Cr.App. 1990). The fact that the driver of the vehicle was not actually "placed under arrest" before the search of the vehicle is insignificant under the facts of this case. Cf.Rawlings v. Kentucky, 448 U.S. 98, 111 and n. 6,100 S.Ct. 2556, 2564 and n. 6, 65 L.Ed.2d 633 (1980) ("[w]here the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa," so long as the fruits of the search were "not necessary to support probable cause to arrest"). See also 2 W. LaFave,Search and Seizure § 5.4(a) (2d ed. 1987).
Even assuming that the appellant's arrest for public intoxication was improper because he had been ordered out of the vehicle by the arresting officer, see Brown v. State,38 Ala. App. 312, 314, 82 So.2d 806, 808 (1955), the fact of that allegedly improper arrest is not relevant to the legitimacy of the search and seizure. The appellant's arrest for public intoxication was not used to justify the search. Furthermore, " '[w]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest.' " Powell v. State, 548 So.2d 590, 600
(Ala.Cr.App. 1988), affirmed, 548 So.2d 605 (Ala. 1989) (quotingUnited States v. Saunders, 476 F.2d 5, 7 (5th Cir. 1973)). See also Reese v. State, 145 Ga. App. 453, 243 S.E.2d 650, 652
(1978) ("The fact that the appellant was not initially charged with rape but with another, apparently baseless, charge does not invalidate the arrest"), cited in Powell, 548 So.2d at 600.
The search of the automobile was justified for the various reasons we have set forth. We conclude that the actions of the law enforcement officers were proper.
 II.
The appellant contends that the exemplified copy of a Georgia robbery conviction used to enhance his sentence under the Habitual Felony Offender Act was not properly certified because it did not have a seal.
At the sentencing hearing, the prosecution offered evidence of two prior convictions from the State of Georgia: a 1980 conviction for armed robbery and a 1983 conviction for forgery in the first degree. Defense counsel objected "to the inclusion of the certification on the robbery in the first degree, the fact that I believe it's improperly certified for lack of a seal." R. 163. Although the certification for both documents was identical, defense *Page 119 
counsel stated that her "objection regarding certification applies to State's Exhibit 1 [the robbery conviction]." R. 163. Defense counsel proffered a different objection to State's Exhibit 2 [the forgery conviction]. That objection is not raised as an issue on this appeal. Both exhibits were admitted into evidence over the appellant's objection. The trial judge then specifically found that the appellant had been "previously convicted of at least two felonies" and sentenced the appellant to life imprisonment as a habitual felony offender.
Here, both exemplifications of the appellant's prior Georgia convictions were by the chief deputy clerk for the Superior Court of Dougherty County, Georgia. Her attestation was certified by the judge of the Superior Court of Dougherty County, whose certification was certified by the deputy clerk. At the conclusion of each attestation by the deputy clerk appeared the phrase: "IN TESTIMONY WHEREOF, I have thereunto set my hand and affixed the seal of said Court." At the conclusion of each certification by the deputy clerk appeared the phrase: "Given under my hand and seal of office."
 "The proper mode of proving prior felony convictions which occur in a sister state is set forth in § 12-21-71, which states in pertinent part:
 " 'The record and judicial proceedings of the courts of any state or territory or of any such country shall be proved or admitted in any other court within the United States by attestation of the clerk and the seal of the court annexed, if there is a seal, together with a certificate of the judge, chief justice or presiding magistrate that the said attestation is in due form. . . .' "
McBride v. State, 480 So.2d 619, 620 (Ala.Cr.App. 1985).
Under § 12-21-70 both exemplifications should have contained the seal of the county court. However, we view the requirement of a seal as a "petty meticulous rule." 5 Wigmore, § 1638 (3d ed. 1940), quoted in the Committee Comments to Rule 44, A.R.Civ.P.
In civil proceedings, § 12-21-70 has been superseded by Rule 44(a)(1), A.R.Civ.P., which provides:
 "An official record kept within the United States, or any state . . . thereof, . . . when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by a person purporting to be the officer having the legal custody of the record, or his deputy. If the official record is kept without the state, the copy shall be accompanied by a certificate under oath of such person that he is the legal custodian of such record and that the laws of the state require the record to be kept."
Other than the fact that the exemplifications do not contain a seal and the fact that they are attested to by the chief deputy clerk instead of the clerk, we have no reason to question the validity of the documentation of the prior convictions. Here, there was no objection to the fact that the attestation was by the chief deputy clerk and not the clerk of the county court. Compare Randle v. State, 554 So.2d 1124, 1130
(Ala.Cr.App. 1986), affirmed, 554 So.2d 1131 (Ala. 1987). The fact that the exemplifications did not contain a seal was a matter of form, which affected no substantial right of the appellant.
We see no reason why there should be a different method in civil and criminal cases for proving the judgments of the courts of sister states. Therefore, we hold that, for purposes involving the application of the Alabama Habitual Felony Offender Act, a prior conviction may be proved either as provided by Ala. Code 1975, § 12-21-70, or as provided by Rule 44(a)(1), A.R.Civ.P.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur. *Page 120