Reginald Elston appeals from his conviction for the unlawful distribution of a controlled substance and his sentence to 28 years' imprisonment. Elston was sentenced pursuant to Alabama's Habitual Felony Offender Act, see § 13A-5-9, Code of Alabama 1975, and his 28-year sentence includes 5 years' enhancement because the sale occurred on or near a schoolyard, see §13A-12-250, Code of Alabama 1975, and 5 years' enhancement because the sale occurred within three miles of a public housing project. See § 13A-12-270, Code of Alabama 1975. Elston raises six issues on appeal.
 I.
Elston contends that the photographic lineup used to identify him was impermissibly suggestive. At trial, the prosecution conceded that Elston's photo had been folded, spindled, or mutilated, and that it had not been developed perfectly. The record shows that this was the only photograph of Elston that was available to the police when they conducted the lineup. In order to prevent the defects from drawing undue attention to the photograph of Elston, the lineup was composed exclusively of photographs with similar defects and depicted people with features similar to Elston's. Elston's photo was mutilated but so were all of the others. We have reviewed the photographic lineup, which is included in the record on appeal, and find this issue to be without merit.
 II.
Elston contends that the records of his prior convictions were not properly authenticated and that, therefore, they were inadmissible as evidence. The records of those convictions were certified by the deputy clerk of the court in which those convictions were obtained. Elston objected to the admission of these records on the grounds that they did not bear the "certificate of the judge, Chief Justice or presiding magistrate that the attestation is in due form." See §12-21-70, Code of Alabama 1975. Section 12-21-70 has been superseded by Rule 44(a)(1), Ala.R.Civ.P., as the means of proving out-of-state convictions for purposes of Alabama's Habitual Felony Offender Act. Ervin v. State, 630 So.2d 115
(Ala.Cr.App. 1992). In accordance with Ervin, this issue is without merit.
 III.
Elston contends that in enacting § 12-21-70, Code of Alabama 1975, the legislature exceeded its authority. He argues that, because this statute provides that documents authenticated as provided therein shall be admissible in every court within the United States, it attempts to govern procedures in other jurisdictions. As stated above, this Code section has been superseded for purposes of Alabama's Habitual Felony Offender Act by Rule 44(a)(1), Ala.R.Civ.P. That rule has no provision similar to the provision in § 12-21-70 that Elston challenges. Section 12-21-70 simply did not apply in Elston's proceeding; therefore, this issue presents nothing for this court to review.
 IV.
Elston correctly argues that the state failed to prove that he was previously convicted of any felonies. See Rule 26.6(b)(3)(iv), Ala.R.Crim.P. (defining "felony conviction" for purposes of Alabama's Habitual Felony Offender Act). Therefore, the trial court erred in applying the Alabama Habitual Felony Offender Act.
The trial court enhanced Elston's sentence upon proof that Elston had pleaded guilty in 1985 to two counts of robbery in Georgia. When the state seeks to use a defendant's out-of-state felony convictions to enhance his sentence under § 13A-5-9
(Alabama's Habitual Felony Offender Act), the state must prove that the conduct for which the defendant was previously convicted constituted a felony in Alabama when it was committed. Gwynne v. State, 499 So.2d 802 (Ala.Cr.App. 1986). The state's burden is satisfied by proving either (1) that the prior out-of-state conviction rests, as a matter of law, on felonious conduct as defined by Alabama law at the time of the prior offense; see, e.g., Gwynne, or (2) that the prior out-of-state conviction rests, in fact, on felonious conduct as defined by Alabama law at the time of the *Page 1242 
prior offense. Mitchell v. State, 579 So.2d 45 (Ala.Cr.App. 1991), cert. denied, 596 So.2d 954 (Ala. 1992).
 A.
Robbery is a felony in Georgia. See § 16-8-40, Code of Georgia (1982). Under that Code section, a person may be convicted of robbery on the basis of criminal conduct that would not be a felony if committed in Alabama. Section §16-8-40(a), provides:
 "A person commits the offense of robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another:
"(1) By use of force;
 "(2) By intimidation, by use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another; or
"(3) By sudden snatching."
(Emphasis added.) This statute encompasses conduct proscribed by Alabama's robbery statutes, §§ 13A-8-41 through -43, Code of Alabama 1975, as well as certain conduct proscribed only by Alabama's theft statutes, §§ 13A-8-3 through -5, Code of Alabama 1975. Analysis under the Habitual Felony Offender Act is limited to the manner in which Alabama law classified the defendant's prior criminal acts only when those prior acts were committed. Wilson v. State, 652 So.2d 778 (Ala.Cr.App. 1994). Therefore, discussion of this issue is based on Alabama law at the time of Elston's Georgia convictions, in 1985. At that time, robbery in any degree was a felony. Likewise, first degree theft and second degree theft were felonies.[1] Theft in the third degree, however, was a misdemeanor only.
Under Alabama law as it stood in 1985, the following conduct constitutes to no more than third degree theft, a misdemeanor.See § 13A-8-5. However, under Georgia's § 16-8-40(a)(3), the same conduct constitutes robbery, a felony: where, without force or threat, a thief steals property that is not in the victim's actual possession, that is not an automobile, and that is valued at less than $250. Therefore, mere proof of a prior conviction of robbery under Georgia's § 16-8-40, without more, is insufficient evidence to trigger the sentence enhancement provisions of Alabama's Habitual Felony Offender Act.
Caselaw supports our conclusion that certain conduct classified as a felony under § 16-8-40 of the Georgia Code would be as a misdemeanor under Alabama law. Compare Crosby v.State, 150 Ga. App. 555, 258 S.E.2d 264 (1979), with Wilder v.State, 30 Ala. App. 107, 1 So.2d 317 (1941). In Crosby, the Georgia Court of Appeals held that the following evidence was sufficient to support the appellant's felony conviction for robbery under Georgia's 16-8-40(a)(3):
 "[T]he victim of the purse snatching . . . testified that her purse was in her clothes basket in the laundromat and as she was starting to put her clothes in the washing machine someone grabbed her purse and ran. Although the evidence of distance between the owner and the purse was circumstantial, it is sufficient to support the finding that the taking was in her immediate presence as it is assumed that she was standing immediately by her clothes basket as she was preparing to transfer the clothes to the washing machine."
Id., 258 S.E.2d at 266. Under Alabama law, the use of force or the threat thereof is a necessary element of robbery in any degree. See §§ 13A-8-41, -42, and -43. Because this element was not present in Crosby, those facts could not have supported a robbery conviction in Alabama.
The conduct discussed in Crosby would support a theft conviction in Alabama; however, that would constitute a felony in Alabama only if the stolen property (1) was stolen from the actual physical possession of the victim, (2) was an automobile, or (3) was proven to exceed $250 in value. See §§13A-8-3 and -4, Code of Alabama 1975. There was no proof inCrosby that the stolen property exceeded $250 in value and it was not an automobile. Furthermore, it was not in the victim's possession, as that element has been *Page 1243 
interpreted in Alabama. In Wilder, the Alabama Court of Appeals clarified the meaning of "possession" for these purposes.
 "Unless the property stolen was actually on or attached to the person by his clothing or otherwise, or was some manner in his actual physical possession, the offense of larceny from the person [now included in § 13A-8-3(a)] has not been committed. Corpus Juris (Vol. 36, p. 866, Sec. 422), in thus stating the law, pronounces it as laid down in the case of People v. McElroy, 166 Cal. 583, 48 P. 718, 719, where, after a review of the leading authorities, the question was thus disposed of by this statement: 'In view of these authorities, and the origin of the statute, we think its obvious purpose was to protect persons and property against the approach of the pickpocket, the purse snatcher, the jewel abstracter, and other thieves of like character who obtain property by similar means, and that it was in contemplation that the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession, — such as clothing, apparel, or ornaments, or property or things contained therein or attached thereto, or property held or carried in the hands, or by other means, upon the person; that it was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control of the owner while so laid away from his person and out of his hands.' "
1 So.2d at 318 (emphasis in Wilder). Contrary to Georgia's robbery statute as applied in Crosby, Alabama law will not support a felony conviction for a theft from the immediate presence of the victim without proof of the value of the stolen property.
In this case, the prosecution's evidence showing that Elston had been previously convicted of violating § 16-8-40 of the Georgia Code was not sufficient to prove that, as a matter of law, Elston had been convicted of criminal conduct that would have been constituted a felony under Alabama law at the time it was committed.
 B.
The evidence at the sentencing hearing was insufficient to prove that the factual basis for Elston's Georgia robbery convictions would have supported a felony conviction under Alabama law when those crimes were committed. The attorney general argues that the allegations in the Georgia indictment were proven to be true, and that, therefore, the indictment provides a sufficient factual basis for our analysis of the conduct underlying Elston's convictions. We disagree. Because of to the manner in which those crimes were prosecuted, that indictment provides only crude indicia of the conduct for which Elston was convicted.
The Georgia convictions were obtained as follows. In three counts, that indictment charged Elston with armed robbery, robbery, and theft by shoplifting, respectively. Elston pleaded guilty to each count; however, he did not plead guilty to any count as it was charged in the indictment: the first count was reduced to the lesser included offense of robbery; the second count was changed to theft by shoplifting; and the third count was changed to robbery. The Georgia court did not find Elston guilty as he was charged in the indictment. Because the record shows that each count of the indictment was at least in part unproven, and because the record does not show which allegations were in fact proven, we cannot rely on these allegations as proof of the factual basis of Elston's Georgia robbery convictions. Thus, the prosecution failed to prove that the conduct underlying those convictions was, in fact, felonious under Alabama law at that time.
Moreover, the nature of the allegations in the Georgia indictment was such that it is possible that Elston pleaded guilty to both robbery counts under § 16-8-40(a)(3) of the Georgia Code.
 V.
Elston contends that §§ 13A-12-250 and -270 are overbroad, and that the three-mile-radius protective zones provided therein are arbitrary and capricious. Therefore, Elston argues, these statutes are in violate the Equal Protection Clause of the Fourteenth Amendment. We disagree. *Page 1244 
 A.
We reject Elston's contention that §§ 13A-12-250 and -270 are overbroad. In McCall v. State, 565 So.2d 1163 (Ala.Cr.App. 1990), this court, with regard to the predecessor of §13A-12-250, found this issue to be without merit. In reaching this conclusion, the McCall court noted:
 " 'The overbreadth doctrine derives from the First Amendment, see Young v. American Mini Theatres, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974), and serves to invalidate legislation so sweeping that, along with its allowable proscriptions, it also restricts constitutionally-protected rights of free speech, press, or assembly, see e.g., Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971). Since there are no First Amendment rights at stake here, the overbreadth doctrine does not apply.' "
Id., at 1165 (quoting McCrary v. State, 429 So.2d 1121, 1123-24
(Ala.Cr.App. 1982), cert. denied, 464 U.S. 913, 104 S.Ct. 273,78 L.Ed.2d 254 (1983)). Therefore, this issue is without merit.
 B.
In Harrison v. State, 560 So.2d 1124 (Ala.Cr.App. 1989), this court held that the one-mile-radius protective zone set out in the predecessor statute to § 13A-12-250 was not arbitrary and capricious.
 "Because the statute does not proscribe activities that are legally protected and does not involve any legally cognizable 'suspect' class, 'the classification must be upheld if "any state of facts rationally justifying it is demonstrated to or perceived by the court." ' United States v. Holland, 810 F.2d 1215, 1219 (D.C. Cir.), cert. denied, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987). The legislature of Alabama 'wanted to lessen the risk that drugs would be readily available to school children. It is surely rational to achieve that goal by increasing penalties for those who sell drugs near schools.' United States v. Agilar, 779 F.2d 123, 125 (2d Cir. 1985), cert. denied, 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986). The enhanced punishment provision of Ala. Code 1975, § 20-2-79 [the statutory predecessor of § 13A-12-250, Code of Alabama 1975], providing for an additional penalty of five years' imprisonment, with no probation, for the unlawful sale of a controlled substance 'if the situs of such unlawful sale was on the campus or within a one-mile radius of the campus boundaries of any public or private school, college, university or other educational institution' is rationally related to the purposes of the statute. Such a 'schoolyard' statute does not violate the principles of equal protection. Holland, 810 F.2d at 1219, and cases cited therein."
Id., at 1128. Based upon the rationale in Harrison, we hold that the three-mile-radius protective zone established by §13A-12-250 is rationally related to the purpose of the statute, and is neither arbitrary nor capricious.
We believe that the legislature's intent in enacting § 13-12-270 was substantially the same as its intent in enacting the "schoolyard statute." In reaching this conclusion, we are persuaded by the fact that § 13A-12-270 mirrors the "schoolyard statute," except that § 13A-12-270 applies only to those drug sales that take place "within a three-mile radius of a public housing project owned by a public housing authority." Apparently, by enacting § 13A-12-270, the legislature " 'wanted to lessen the risk that drugs would be readily available to [families living in poverty].' " Id. (quoting Agilar, at 125). Thus, the rationale applied in Harrison to uphold the schoolyard statute is applicable to this statute. We hold that the three-mile-radius protective zone provided by § 13A-12-270
is rationally related to the legislature's purpose in enacting that statute, and is neither arbitrary nor capricious.
 VI.
Elston also argues that § 13A-12-270 is unconstitutional because he claims that this statute singles out an arbitrary class of people for protection, and that the statute does not serve a reasonable purpose. This statute affords those living in public housing *Page 1245 
projects protection against the hazards associated with the buying and selling of illegal drugs. This class is not arbitrary. It is reasonable for the legislature to strive to ensure that the hardships already confronting those subsisting on public aid are not compounded by the perils associated with a flourishing neighborhood drug trade. See generally, §24-1-21, Code of Alabama 1975 (wherein the Alabama Legislature found that the establishment of public housing authorities was necessary to remedy the fact that "persons of low income are forced to occupy overcrowded and congested dwelling accommodations; [and] that these conditions cause an increase in and spread of disease and crime"). This issue is without merit.
Accordingly, Elston's conviction is affirmed. However, we are constrained to grant a new sentencing hearing to determine whether the conduct underlying his prior Georgia robbery convictions would have been punishable as a felony if committed in Alabama at that time. See Mitchell. On remand, if the state fails to prove its allegation in this regard, then the trial court must resentence Elston without applying Alabama's Habitual Felony Offender Act.
AFFIRMED AS TO CONVICTION; REMANDED WITH DIRECTIONS FOR PROPER SENTENCING.*
All Judges concur.
[1] As of the writing of this opinion, second degree theft is also a misdemeanor in Alabama; however, at the time of Elston's Georgia convictions second degree theft was a felony in Alabama. See Wilson v. State, 652 So.2d 778 (Ala.Cr.App. 1994).
* Note from the Reporter of Decisions: On November 22, 1996, on return to remand, the Court of Criminal Appeals affirmed, without opinion.